Argued April 27, affirmed May 21, petition for rehearing
denied June 23, 1970. Petition for review denied by
Supreme Court September 9, 1970

# BORICH TRANSFER CO., *Appellant, v.*
# HALEY, PUBLIC UTILITIES COMMIS-
# SIONER ET AL, *Respondents.*

469 P2d 638

*Lawrence V. Smart, Jr.*, Portland, argued the cause and filed the briefs for appellant. With him on the briefs were Smart & Bartsch, Portland.

*John H. Socolofsky*, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With him on the brief were Lee Johnson, Attorney General, and Richard W. Sabin, Assistant Attorney General and Chief Counsel, Public Utilities Commissioner, Salem.

*Robt. R. Hollis*, Portland, argued the cause and filed the brief for intervenors-respondents Valley Motor Lines, Inc., and Arrow Transportation Co. of Delaware.

*John G. McLaughlin*, Portland, filed the brief for intervenors-respondents Bend-Portland Truck Service, Inc., and Consolidated Freightways Corp. of Delaware. With him on the brief were McLaughlin & Stearns, Portland.

Before Schwab, Chief Judge, and Foley and Branchfield, Judges.

SCHWAB, C. J.

Plaintiff, a family corporation created to take over the trucking business of a family member, filed an application with defendant Public Utilities Commissioner to acquire by transfer the motor carrier transportation permit held by Nikola Borich. The permit

held by the transferror authorized motor vehicle transportation service as follows:

"COMMON CARRIER TRANSPORTATION OF PROPERTY IN INTRASTATE COMMERCE IN OREGON, RESTRICTED AS FOLLOWS:

"IRREGULAR ROUTE SERVICE:

"GENERAL COMMODITIES, EXCEPT PETROLEUM AND PETROLEUM PRODUCTS IN BULK IN TANK-TYPE VEHICLES, WITHIN 60 ROAD MILES OF PORTLAND, OREGON, AND FROM PORTLAND OR ANY POINT WITHIN 60 ROAD MILES THEREOF TO ANY POINT IN OREGON AND FROM ANY POINT IN OREGON TO PORTLAND OR ANY POINT WITHIN 60 ROAD MILES THEREOF.

"LOCAL CARTAGE SERVICE:

"GENERAL COMMODITIES WITHIN THE CORPORATE LIMITS OF THE CITY OF PORTLAND."

The Public Utilities Commissioner held a hearing on the application, ORS 767.135, after which the Commissioner issued an order which authorized the transfer of the permit, but which reduced the scope of the authority transferred. Plaintiff brought suit in the manner authorized by ORS 756.580 in circuit court to require the Commissioner to transfer to it the entire authority held by the transferror. In the circuit court plaintiff, under the provisions of ORS 756.600, elected to offer additional evidence, which was taken before an examiner. After the receipt of the additional evidence, the Commissioner entered a new order which again authorized the transfer of the permit, but still

reduced, though to a lesser degree, its scope. The authority under the new permit was as follows:

"COMMON CARRIER OF PROPERTY IN INTRASTATE COMMERCE IN OREGON, RESTRICTED AS FOLLOWS:

"IRREGULAR ROUTE SERVICE:

"GENERAL COMMODITIES EXCEPT COMMODITIES IN BULK REQUIRING THE USE OF TANK OR HOPPER-TYPE VEHICLES, WITHIN 30 ROAD MILES OF PORTLAND.

"BUILDING AND CONSTRUCTION MATERIALS OTHER THAN WHEN MOVING IN BULK BY THE USE OF TANK OR HOPPER-TYPE VEHICLES AND STORE FURNITURE, FIXTURES, EQUIPMENT AND SUPPLIES OTHER THAN STOCK-IN-TRADE FROM PORTLAND AND POINTS WITHIN 30 ROAD MILES THEREOF TO ANY POINT IN OREGON AND FROM ANY POINT IN OREGON TO PORTLAND OR ANY POINT WITHIN 30 ROAD MILES THEREOF.

"LOCAL CARTAGE SERVICE:

"GENERAL COMMODITIES, EXCEPT COMMODITIES IN BULK REQUIRING THE USE OF TANK OF [sic] HOPPER-TYPE VEHICLES, HEAVY MACHINERY REQUIRING THE USE OF LOWBED EQUIPMENT AND HOUSEHOLD GOODS, WITHIN THE CORPORATE LIMITS OF THE CITY OF PORTLAND."

The circuit court affirmed the order of the Commissioner. Plaintiff appeals the order of the circuit court making two assignments of error:

(1) "The court erred in failing to hold that the defendant acted arbitrarily and contrary to law in finding that the continuous and substantial opera-

tions conducted by the transferror did not warrant a transfer of his entire operating permit."

(2) "The Court erred in failing to hold that the defendant misconstrued the public interest in not authorizing the continuance of a long established and active motor carrier service."

■ A permit does not confer any property right upon the holder thereof, ORS 767.185 (3), and for all practical purposes, granting of a transfer is governed by the same standards as the granting of a new permit. In *Bend-Portland Truck Serv. v. P.U.C. et al,* 221 Or 514, 351 P2d 1117 (1960), dealing with the same kind of situation as the case at hand, that is, request for a transfer of a permit from one entity to another, the Supreme Court pointed out that the material statutory provisions pertinent to such transfers are contained in ORS 767.135 and 767.185. ORS 767.185 provides in subsection (1) that no permit shall be assigned or otherwise transferred except after hearing as provided in ORS 767.135.[①] ORS 767.135 establishes the procedures and criteria governing the issuance of permits. The *Bend-Portland Truck Service* opinion, supra, applying these statutes, said:

"* * * an applicant must show that his proposed operation is 'in the public interest.' *Pierce Freight Lines v. Flagg* [177 Or 1, 159 P2d 162 (1945)], * * *, discusses at length the effect of the language used in the former statute and is instructive in construing the present law." 221 Or at 518.

The *Pierce Freight Lines* case, supra, also holds:

" 'The procedure thus outlined recognizes the commissioner as the fact-finder, and deems his action as administrative. In other words, the facts

---

[①] We are here dealing with the statutes as of 1967.

in matters of this kind are found, not by the judge, but by the commissioner. The commissioner's findings are binding upon the court, in the event of judicial review, if supported by cogent, competent, material and substantial evidence.' " *Bend-Portland Truck Serv. v. P.U.C. et al*, supra, at 518-19.

At the initial hearing on the application and again when additional evidence was submitted plaintiff elected to meet the public interest requirement through evidence of past business of the transferror. Plaintiff submitted abstracts of selected shipments for the years 1962 through 1967. The Commissioner did not consider evidence of patronage prior to 1964 or subsequent to the filing of the application. Plaintiff has not raised any objection to the Commissioner's limitation of evidence considered.

Plaintiff, contending that the evidence showed shipments of a number of different commodities, argues that it is error for the Commissioner to classify the commodities in order to show that part of the authority of the permit held by the transferror was lightly used. Justification for such classifications is found in the order of the Commissioner:

"In determining the pattern of a carrier's operations, the Commissioner must keep in mind the basic commodity classifications which historically have been utilized by the industry and regulatory agencies. For the purpose of establishing uniform rates for commodities with similar shipping characteristics and requirements, commodity classifications have been established and are used in similar forms throughout the United States on both state and federal levels. In many cases, sub-classifications have been established. These classifications have been used not only in the establishment of rates but, in Oregon, carriers also have used them in defining and applying for operating authority.

> Such classifications have been accepted by the industry in general and are found in all tariff publications. A large majority of the carriers in Oregon also maintain I.C.C. Certificates and Permits. For uniformity, the Commissioner has adopted essentially the same classification system as the Interstate Commerce Commission, both for rate classification and for defining operating authority."

Although the abstracts of shipments offered as evidence of past patronage of the transferror were selected by plaintiff to show the scope of transferror's operations for the three and one-quarter-year period considered, plaintiff offered abstracts of only two shipments which were not within the geographical limitations of the questioned order and only about 30 shipments which did not consist of commodities authorized by the order. The plaintiff offered no other type of evidence.

2. The legislative policy enunciated in ORS 767.135 is that the standard for measuring the issuance of permits shall be the public interest. In so far as the portions of the old permit that the Commissioner deleted in granting the transfer are concerned, the plaintiff offered nothing except the aforementioned abstracts of its transferror's activities. Measuring the plaintiff's case as we must by the same standards as we would measure the case of an applicant for a new permit, we cannot say that the Commissioner abused his discretion by finding that the plaintiff had failed to meet the burden of proving that the transfer of the entire permit would be in the public interest. See *Bend-Portland Truck Serv.*, supra.

As an additional argument under the first assignment of error, the plaintiff cites a number of federal

cases dealing with the "grandfather clauses" of the Interstate Commerce Act as authority for its contention that the Commissioner did not have the right to "atomize" the scope of the original permit. These cases are not helpful to the plaintiff. The "grandfather clauses" of the Interstate Commerce Act authorize the issuance of permits to carriers whose service antedated Interstate Commerce Commission jurisdiction without a showing of the federal Act's counterpart of Oregon's "public interest" standard. Oregon's statutory provisions relating to transfer of permits are to the contrary.

■ In support of the second assignment of error plaintiff argues only that it is in the public interest to have regulated competition in transportation service, citing *Mt. Hood Stages, Inc. v. Hill*, 243 Or 283, 413 P2d 392 (1966), and *Arrow Transportation Co. v. Hill*, 236 Or 174, 387 P2d 559 (1963). The abstract statement of the law is correct, but neither this principle of law nor the cases cited which enunciate it are in point.

In *Arrow*, the issue was whether the Commissioner was required to deny a permit if existing carriers were already adequately serving the area. The court there held that regulated competition was Oregon's policy and hence the existence of adequate service would not, in and of itself, require the Commissioner to deny a new permit.

In *Mt. Hood Stages, Inc.*, the court held that the Commissioner was in error in so far as he had stated in his order that a question to be considered was whether the public purpose to be served by the applicant could be served as well by existing carriers. It did not hold, as plaintiff appears to contend, that every time there is an application for a new permit the Com-

missioner must grant it unless there is evidence from which he can find that the public interest would not be served because the granting of a new permit would "impair" the ability of the existing carriers to continue service.

Affirmed.