In re Elmer Dwayne HUMPHRIES, Bankrupt.

ASSOCIATES COMMERCIAL CORPORATION, a Delaware Corporation, Plaintiff,

v.

John C. GREEN, Trustee, Defendant.

Bankruptcy No. B–78–00342.

United States Bankruptcy Court, D. Utah C. D.

Oct. 1, 1979.

John H. Allen, Salt Lake City, Utah, for plaintiff.

John C. Green, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

RALPH R. MABEY, Bankruptcy Judge.

This case was submitted to the Court without oral argument. John H. Allen represented the plaintiff, Associates Commercial Corporation. John C. Green represented himself as trustee. The facts and testimony concerning the case were stipulated. The Court now renders the following decision which incorporates its findings of fact and conclusions of law.

On May 12, 1977, the bankrupt bought a new 1977 Kenworth truck/tractor from Colorado Kenworth, Inc. At that time, he executed a security agreement in favor of Colorado Kenworth, Inc. which was then assigned to the plaintiff herein, Associates Commercial Corporation. Included with the delivery of the security agreement to the plaintiff were the Manufacturer's Statement of Origin and the Dealer's Bill of Sale. There ensued a series of transactions designed, on the part of the plaintiff, to obtain a new certificate of title on the truck which would note its first lien on it.

The first such attempt began on May 20, 1977 when plaintiff forwarded to the Motor Vehicle Division of the Utah State Tax Commission, by certified mail, the Dealer's Bill of Sale and the Manufacturer's Statement of Origin together with a notation of first assignment in favor of plaintiff. The documents were received by the Motor Vehicle Division on May 23, 1977. Then in

answer to an inquiry by the plaintiff as to the status of its application of title, plaintiff was informed by a letter of August 4, 1977 that although the Motor Vehicle Division had been holding the documents in their pending file for the last two months, Mr. Humphries, the bankrupt, had not completed the registration, and they were therefore returning the documents. The plaintiff returned the documents to the Motor Vehicle Division of the Utah State Tax Commission on August 24, 1977. A copy of the letter accompanying the documents was sent to the bankrupt at this time along with a note advising the bankrupt to complete the registration process. This attempt at registration again apparently aborted.

In December of that same year, the bankrupt was working in Nevada. On December 13, 1977, the plaintiff forwarded the documents to Mike Mahoney, the bankrupt's employer in Nevada, to obtain assistance in registering the title in Nevada. On January 18, 1978, pursuant to plaintiff's earlier inquiry as to the status of the title, the Nevada Motor Vehicle Department notified· plaintiff that it had no record of the documents being processed. On February 16, 1978, Stanford R. Mahoney returned the documents to plaintiff. Mr. Humphries then filed bankruptcy on April 21, 1978.

It has been stipulated that representatives of plaintiff had several telephone conversations with the bankrupt between August 4, 1977 and April 21, 1978, during which time he promised to get the truck registered and the taxes paid so that a new certificate of title could be issued. The last such promise was in March of 1978. As of the filing of bankruptcy, no certificate of title had been issued on the truck. The parties also stipulated that the Manufacturer's Statement of Origin was in possession of the plaintiff or its agents or the Motor Vehicle Division of the Utah State Tax Commission at all times between the time the truck was bought and the filing of bankruptcy.

If the bankrupt were to testify, the parties stipulated he would claim that he attempted to register the vehicle, but could not as he had no Manufacturer's Statement of Origin and that plaintiff refused to give him that document. He would testify that the vehicle was registered three or four times temporarily in Utah and also in Nevada. He would claim that he made payments on the truck from June, 1977 through January, 1978, and that these payments stopped only when the plaintiff refused to cooperate in registering the vehicle and when the vehicle began having mechanical problems.

Utah Code Ann. §§ 41–1–80 *et seq.* (1953) state clearly that the exclusive method of perfecting a lien on a motor vehicle is through notation on the certificate of title. This Court has recognized and interpreted the exclusive nature of these provisions in its recent opinion, *In re Van Wyck*, Nos. B–78–00324 and B–78–00325 (D.Utah Aug. 7, 1979). Thus, by rigid application of the statute, the lien in question would be unperfected and thus unsecured as against the claim of the trustee in bankruptcy. This case, however, falls squarely within the equitable exception to this type of statute which was enunciated by the United States Court of Appeals for the Tenth Circuit in *Commerce Bank v. Chambers*, 519 F.2d 356 (10th Cir. 1975).

*Commerce Bank v. Chambers, supra,* originated in the District of Kansas and concerned a situation, much like this one, where the buyers of a motor vehicle failed to apply for registration or a certificate of title and subsequently filed bankruptcy. Under Kansas law, as under Utah law, it was the responsibility of the buyer to obtain the new certificate of title, and the Bank argued that it had done all it could under the statute ·to protect itself by delivering the proper documents to the buyer with its lien noted thereon. The court, in taking into consideration the equities of the situation, concluded that, as the bank did all that was required of it under the circumstances to perfect the lien, it should not be penalized for the buyer's failure to comply with his statutory responsibility to obtain a certificate of title for the vehicle. Therefore, the court held that the security interest was

valid as against the trustee in bankruptcy. The court pointed out that the Bill of Sale had the lien noted on it, and thus, in the absence of fraud, when the certificate of title was issued, it would be noted thereon. Also, this Bill of Sale would give notice to potential purchasers or creditors. Further, it noted that there was in that case no claim of prejudice to unsecured creditors or purchasers arising from this failure to obtain the certificate of title. In fact, to decide the case otherwise would result in a windfall to unsecured creditors.

Although the facts in this case are a little different from those in *Commerce Bank,* they are sufficiently analogous that the rationale and holding of that case squarely apply to the situation at hand. Here, although the lienholder, Associates Commercial Corporation, did not give the Bill of Sale to the bankrupt, it did submit the documents to the Utah Motor Vehicle Division on two occasions, thus making them available to the bankrupt to complete his title registration. Although the bankrupt claims that the plaintiff did not cooperate by turning over the Bill of Sale and the Manufacturer's Statement of Origin, this assertion is weak in light of the well-documented attempt of the plaintiff to obtain registration, and the several opportunities bankrupt had, through plaintiff's actions, to complete registration and obtain a certificate of title during the period in question. It also appears from the stipulated facts that bankrupt's failure to pay taxes on the vehicle may have further thwarted registration. The lienholder in this case then did all that was required of it and more, for it partially completed the file of documents necessary for registration, leaving on the bankrupt only the responsibility of concluding what it could not do. As in the *Commerce Bank* case, the lien was noted on the Bill of Sale, and thus, absent fraud, a clean certificate of title could not have been obtained and notice would have been imparted to a purchaser or creditor. Also, as in the *Commerce Bank* case, there is no prejudice to intervening third parties, and thus under the holding of that case, the security interest of plaintiff here is valid as against the trustee.

In a recent case, *Lentz v. Bank of Independence,* 598 F.2d 1206 (10th Cir. 1979), the court reconsidered its holding in the *Commerce Bank* case, and, due to a change in Kansas law, abandoned the rule enunciated in the former case. This change in the applicable Kansas statutes provided the secured party with an alternative means to perfect his lien without relying on the purchaser's cooperation. The creditor could, under this new law, mail to the appropriate state agency a notice of his security agreement and thereby have it perfected. This change in Kansas law was the sole reason for the reconsideration and abandonment of the *Commerce Bank* holding, and since no corresponding change in Utah law has been made, the *Commerce Bank* case and rationale are still apposite here.

As noted earlier, this Court in *In re Van Wyck, supra,* interpreted Utah Code Ann. §§ 41-1-80 *et seq.* (1953) to establish notation of a lien on the certificate of title as the exclusive way to perfect a lien on a motor vehicle. Since no current lien notation appeared on the title discussed in *Van Wyck,* the disputed lien was held to be unperfected. That case, however, differs factually and equitably from the present case. In *Van Wyck,* the seller himself held the certificate of title and had it within his power to perfect his lien. For whatever reason, he failed to do so. Thus, in *Van Wyck,* the lien holder did not do all that he could to protect and perfect his interest, and consequently could not avail himself of the equitable exception enunciated in *Commerce Bank.*

The defendant, in his memorandum, directed the Court's attention to the case of *McIntosh v. United States,* 21 Utah 2d 12, 439 P.2d 464 (1968), which held, in part, that a chattel mortgage on a motor vehicle, which was not filed with the Utah State Tax Commission until two days after the owner of the vehicle filed bankruptcy, was unperfected and inferior to the rights of the trustee in bankruptcy. The facts of that case, like the *Van Wyck* case, do not give rise to the equitable considerations of *Com-*

*merce Bank.* Therefore, the Utah Supreme Court, in its brief treatment of the question, did not discuss, nor have reason to discuss, the *Commerce Bank* rule. The Court's decision today is not inconsistent with the cited Utah case.