J. BLAINE ANDERSON, Circuit Judge:
Silver Wheel Freightlines, Inc. (“debtor” or “Silver Wheel”) appeals the judgment of the district court affirming the decision of the bankruptcy court determining the priority of rights and interests in certain property of debtor’s bankruptcy estate. The bankruptcy court awarded Freightliner Market Development Corp. (“Freightliner”) the proceeds derived from the liquidation of debtor’s transportation operating authorities and all of debtor’s accounts receivable. Debtor appeals these awards. Freightliner cross-appeals the judgment avoiding its security interest in the proceeds of certain of debtor’s vehicles and rolling stock, except to the extent of $40,-689.67. We affirm on all issues.
I. FACTS
On August 2, 1982, debtor and Freight-liner entered into a lease agreement (the “lease”) by which debtor leased certain tractors from Freightliner. The security agreement, securing debtor’s performance under the lease, gave as collateral for amounts due under the lease ($3.5 million): (1) a security interest in all of debtor’s vehicles and rolling stock encumbered by prior security interests, (2) accounts receivable except to the extent they were subject to the interests of Tradex Inc., and (3) general intangibles.
Prior to the lease transaction between debtor and Freightliner, Fruehauf Corporation (“Fruehauf”) and Transport Acceptance Corporation (“TAC”) had acquired perfected security interests in some of debtor’s vehicle collateral. These security interests had been perfected by notation of the interests on the certificates of title covering the collateral pursuant to ORS 481.413(2) (1983).[1]
In May 1982, in anticipation of the lease transaction, TAC and Fruehauf agreed to release to Freightliner the certificates of title to the vehicle collateral for notation of Freightliner’s security interest. After the lease was executed, however, both TAC and Fruehauf refused to release the certificates of title until the balance due them from debtor was fully paid because of an intervening default by debtor under the loan agreements with TAC and Fruehauf.
On November 4, 1982, debtor filed a voluntary Chapter 11 petition in bankruptcy. Debtor continued to operate as a debtor-in-possession until June, 1983, when Everette H. Williams (“Trustee”) was appointed as an operating trustee. The case was converted to a Chapter 7 liquidation on July 1, 1983.
On December 16, 1982, Fruehauf and TAC assigned their rights under the loans and in the vehicle collateral to Freightliner in consideration of Freightliner’s payment of the outstanding balance due them from debtor of $40,689.67. On December 21, 1982, TAC and Fruehauf delivered the per *365 tinent certificates of title to Freightliner. Between January .24 and 27, 1983, Freight-liner received from the Oregon Motor Vehicles Division (“MVD”) certificates of title to the vehicle collateral with Freightliner’s security interest noted thereon.
Freightliner initiated an adversary proceeding on July 6, 1983, by filing a complaint for relief from the automatic stay. Freightliner sought to foreclose its security interest in property of debtor’s bankruptcy estate and to recover funds received by the Trustee from the transfer of debtor’s transportation operating authorities. The Trustee defended against the complaint, contending that Freightliner did not hold a perfected security interest in particular vehicles and rolling stock of the estate and that Freightliner was not entitled to proceeds derived from the transfer of the operating authorities.
The Bankruptcy Court conducted an evi-dentiary hearing and heard oral argument on July 11, 1984. On January 8, 1985, it entered a judgment based on separately entered Findings of Fact. The judgment avoided Freightliner’s security interest in the proceeds of the vehicles and rolling stock, except for $40,689.67, and awarded Freightliner the proceeds of all debtor’s accounts receivable and the proceeds derived from the transfer of the transportation operating authorities. The district court affirmed the bankruptcy court’s judgment in all respects.
II. DISCUSSION
A. Perfected Security Interest
Article 9 of the Oregon Uniform Commercial Code (“UCC”) governs the perfection of security interests in personal property. See ORS 79.1010 to 79.5070. The UCC filing provisions do not apply, however, to perfection of a security interest in property subject to a certificate of title statute. ORS 79.3020(3)(b). The Oregon Motor Vehicle Code provided that the exclusive method for perfection of a security interest in non-inventory motor vehicles covered by a certificate of title was application for and notation of the security interest on the certificate of title. ORS 481.-413(2), repealed, Or.Laws 1983, ch. 338, §§ 978, 981 (repeal effective January 1, 1986). General Electric Credit Corp. v. Nordmark, 68 Or.App. 541, 684 P.2d 1, 3 (Or.App.1984).
1. Was the Security Interest Perfected When the Bankruptcy Petition was Filed?
The bankruptcy court held, and the district court affirmed, that Freightliner failed to perfect its security interest prior to the filing of debtor’s bankruptcy petition. However, because it paid $40,689.67 for the assignment of Fruehauf’s and TAC’s perfected security interests, the courts below held that Freightliner acquired a perfected security interest to the extent of those payments.
There is no question that Freightliner failed to comply with the exclusive method of perfecting its security interest in debt- or’s vehicles and rolling stock. Debtor filed its bankruptcy petition on November 4, 1982. The earliest date on which Freightliner could have placed the required notation on the certificates of title was December 16, 1982. This was the date Freightliner received the certificates of title from TAC and Fruehauf. In actuality, Freightliner did not receive, from the MVD, the certificates of title with the requisite notations on them until between January 24 and 27, 1983. Freightliner, therefore, did not comply with the requirements of ORS 481.413(2) until after the bankruptcy petition was filed.
Freightliner claims, however, it did everything it could to perfect its interest in debtor’s vehicle collateral before the bankruptcy petition was filed. It would have been successful, Freightliner contends, had it not been for debtor’s intervening default on the loans to TAC and Fruehauf and the reticence of both of those third-party assignors in handing over the certificates of title. As a consequence, Freightliner argues that it is entitled to an equitable exception to the exclusive method of perfecting security interests pursuant to ORS 481.413(2). We do not agree.
*366 The wording of ORS 481.413(2) indicates that no equitable considerations will be allowed. The statute, by its own wording, provides for the exclusive means by which a security interest in motor vehicles is perfected. A Bankruptcy Appellate Panel of this court recognized “that a requirement of strict compliance with the terms of [an Arizona notation statute nearly identical to the Oregon statute] might be harsh and even unfair, however, it felt ‘constrained by the mandatory language of the statute to give strict interpretation.’ ” In re Santa Fe Adobe, Inc., 34 B.R. 774, 775 (9th Cir. BAP 1983) (quoting Noble v. Bonnett, 118 Ariz. 397, 577 P.2d 248, 250 (Ariz.1978)).
Moreover, the purpose and legislative intent behind the statute suggests a strict interpretation:
[T]he clear contemplation of the [Oregon] legislature in ... providing for an exclusive method of perfecting security interests in motor vehicles recognized the mobility of the vehicles, the requirements for registration for use and title to obtain registration and the need for a uniform method to ascertain interests in such property exclusively. To retain a perfected security interest it was contemplated that the statutory requirements would be, and would be required to be, observed.
In re Hillstrom Shipbuilding Co., 5 B.R. 87, 91 (Bkrtcy.D.Oregon 1980).
Freightliner relies on In re Humphries, 1 B.R. 82 (Bkrtcy.D.Utah 1979) to support its argument that it is entitled to an equitable exception. In that case, plaintiff lienholder attempted to obtain from the Utah Motor Vehicle Division a new certificate of title on a truck so it could note its lien thereon. The plaintiff was thwarted due to the failure of the bankrupt to complete registration. In interpreting a notation statute nearly identical to Oregon’s, the Utah court held that the lienholder qualified for an equitable exception to the statute because the lienholder “did all that was required of it ... leaving on the bankrupt only the responsibility of concluding what it could not do.” Id. at 84. Furthermore, “the lien was noted on the Bill of Sale and thus, absent fraud, a clean certificate of title could not have been obtained and notice would have been imparted to a purchaser or creditor.” Id. As a consequence, there could be no prejudice to intervening third parties. Id.
Humphries is distinguishable. In the case at bar the bankrupt cannot be blamed for Freightliner’s failure to properly perfect its interest. The delay was caused by third party creditors trying to protect their own interests. Furthermore, the majority of the courts have held against Freightliner’s argument. In In re Krulik, 6 B.R. 443 (Bkrtcy.M.D.Tenn.1980), the creditor admitted it did not perfect its interest in accordance with Tennessee’s notation statute. But, it argued that its security interest was not perfected because it relied upon the debtor to apply for the title and he failed to do so. The court held that “[r]eliance upon the purchaser of a motor vehicle ... does not overrule the ... statute’s strict mandate with respect to perfection of security interests in such vehicles.” Id. at 447. The same rule has been applied to third parties.
Though the actions of a third party were largely responsible for the failure to perfect the security interest, the bank was not entirely free from fault. It clearly could have, and indeed should have, more closely scrutinized the actions of those with whom it dealt. Furthermore, reliance upon the actions of a third party does not override the explicit statutory provisions. Matter of Schalk, 592 F.2d 993 (8th Cir.1979).
Concededly, there is some inequity in the result reached. The result is nevertheless dictated by the legal technicalities governing commercial transactions. Shelton v. Erwin, 472 F.2d 1118 (8th Cir.1973); Safe Deposit Bank and Trust Co. v. Berman, 393 F.2d 401 (1st Cir.1968).
In re Keith, 3 B.R. 382, 383 (Bkrtcy.E.D. Missouri 1980). See also In re Groves, 64 B.R. 329, 331 (Bkrtcy.M.D.Tenn.1986). We agree with this reasoning. As a consequence, Freightliner does not qualify for an equitable exception to ORS 481.413. The trustee properly avoided Freightliner’s se *367 curity interest in debtor’s vehicle collateral except to the extent that Freightliner was subrogated to the perfected rights of its assignors.
2. To What Extent Was Freightliner Subrogated to the Perfected Security Interests of its Assignors?
Both parties agree that to the extent of Freightliner’s payment of $40,-689.67 of the debt owed Fruehauf and TAC, Freightliner is properly subrogated to the prior perfected security interests of Fruehauf and TAC. ORS 79.3020(2) provides:
If the secured party assigns a perfected security interest, no filing under ORS 79.1010 to 79.5070 is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor.
ORS 481.410(3) provides that the holder of a security interest may assign the interest in a vehicle to a person other than the owner without affecting the interests of the owner or the validity or priority of the security interest. Similarly, a party who advances money to discharge a prior lien on real or personal property and thereafter takes a new mortgage as security for the payments of the prior debt is subrogated to the prior lien. In re Allen, 32 B.R. 93 (Bkrtcy.D.Or.1983); Metropolitan Life Ins. Co. v. Craven, 164 Or. 274, 101 P.2d 237 (1940). However, an assignee generally takes only the interest of its assignor.
Freightliner argues that the circumstances under which the assignments were exe-rated justify an extension of the rule of subrogation to give a security interest in all of debtor’s vehicle collateral to the full amount of Freightliner’s claims. It contends that the assignors’ possession of the certificates of title and prior agreements to release the certificates, together with the assignments, rendered Fruehauf and TAC agents and bailees of Freightliner, thereby allowing perfection in the vehicle collateral as security for debtor’s obligations under ORS 79.3050.[2]
Freightliner’s argument is unavailing. As discussed above, ORS 481.413(2) is the exclusive method of perfecting a security interest in the debtor’s vehicle collateral. We do not accept Freightliner’s invitation to engraft a legal exception to the notation statute for the same reasons we do not engraft an equitable exception.
B. Post-Petition Accounts Receivable
The bankruptcy court held that debtor violated 11 U.S.C. § 363(c)(2)[3] because it used cash collateral derived from collection of accounts receivable purportedly covered by Freightliner’s security interest without a court order or Freightliner’s consent. Unless the Trustee gets a court order or consent, he is obligated to segregate and account for any cash collateral in his possession, custody, or control. 11 U.S.C. § 363(c)(4).[4] Because the Trustee failed to perform his duties under § 363, the court found that the parties were prevented from tracing the proceeds of Freightliner’s collateral or establishing the level of Freightliner’s receivables collateral *368 at the time of the filing of the bankruptcy petition. The bankruptcy court concluded, therefore, that Freightliner had a security interest in all of debtor’s pre- and post-petition accounts receivable.
The underlying proceeding in this appeal was commenced by a complaint for relief from an automatic stay. 11 U.S.C. § 362(g) provides:
In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
(1) The party requesting such relief has the burden of proof on the issue of the debtor’s equity in property; and
(2) The party opposing such relief has the burden of proof on all other issues.
In this proceeding, the bankruptcy court shifted the burden of proof on all issues to the Trustee. The basis for the shift was the court’s view that debtor improperly used cash collateral in violation of § 363(c)(2). The court concluded that the burden of proof on the issue of tracing the accounts receivable was most fairly placed on the Trustee because his predecessor’s (debtor’s) breach of duty resulted in the inability to trace the proceeds derived therefrom. The court found that the Trustee failed to meet his burden of proof (i.e., that pre-petition receivables were not being used after entry of the cash collateral orders.) The court enforced Freight-liner’s security interest in all of debtor’s pre- and post-petition accounts.
Trustee for the debtor argues that Freightliner consented to use of the cash proceeds after filing occurred and therefore there was no violation of § 363. As a consequence, he argues, the court erred in shifting the burden of proof to the Trustee on all issues. Furthermore, argues the Trustee, if Freightliner had properly had the burden of proof, it would have been unable to prove that pre-petition receivables were still being used after entry of the cash collateral orders. Therefore, Freight-liner should not have been given a security interest in all of debtor’s pre- and post-petition receivables.
Both sides agree that Freightliner did not give actual consent to the Trustee to use the cash collateral. Nor did the Trustee get court authorization to do so — at least not until it requested the cash collateral orders after defaulting on its payments.[5] The Trustee argues that Freight-liner either gave its implied consent or is estopped by its actions from denying consent. The Trustee points to Freightliner’s conduct after the petition was filed as proof of consent. He argues that Freight-liner knew of debtor’s operations and knew that the money which had been used to pay Freightliner each month came from proceeds of its collateral. According to the Trustee, Freightliner’s acceptance of debt- or’s monthly payments indicated its consent to that continued use and its satisfaction with the receipt of those monthly payments as adequate protection. Therefore, because Freightliner failed to object, it cannot now complain about debtor’s use of the cash collateral.
First, we find that the purposes underlying § 363(c)(2) & (4) require that a debtor seek affirmative express consent from all parties involved before using cash collateral. See 2 Collier on Bankruptcy, 363.02 (15th ed. 1986) (the protection offered by § 363(c)(2) is “in recognition of the unique nature of cash collateral-, and the risk to the entity with an interest therein arising from the consumption of the collateral in a rehabilitative effort in bankruptcy.”); 2 Collier on Bankruptcy, 363.04 (“It was recognized that due to the unique nature of cash collateral, specific protections should apply to prevent its dissipation, leaving the court and the entity with an interest therein with a fait accompli.”). Without deciding whether Freightliner, by its actions, gave debtor its implied consent to use the cash collateral or is estopped from denying such consent, we find implied *369 consent to be insufficient to satisfy the requirements of § 363(c)(2).
Second, we find that notions of equity and fairness support the bankruptcy court’s shift of the burden of proof on the issue of tracing to the Trustee. See United States v. Hayes, 369 F.2d 671, 676 (9th Cir.1966). This is especially true where, as here, the Trustee’s predecessor, the debt- or’s, breach of duty has created the confusion preventing proof of the issue. See id.
C. Operating Authorities
Freightliner held a perfected security interest in debtor’s general intangibles[6] pursuant to the security agreement executed by the parties on August 2,1986, and the subsequently filed financing statement. Based on that security interest, the bankruptcy court held that Freightliner had an interest superior to that of the Trustee in the proceeds of the sale of debtor’s transportation operating authorities. The bankruptcy court reasoned that:
Given the fact that the operating rights in this case have, in fact, been transferred to the buyer’s satisfaction, further inquiry into their transferability under ORS Chapter 767 and relevant provisions of United States and Canadian law is pointless. If the rights produce proceeds, those rights are in fact “property”. Since plaintiff’s security interest therein was properly perfected, its interest is superior to that of the trustee.
We agree. The transportation operating authorities are property as between these two private parties and are therefore general intangibles subject to Freightliner’s security interest.
The Trustee relies on Borich Transfer Co. v. Haley, 2 Or.App. 606, 469 P.2d 638 (1970), to assert that operating authorities are a privilege rather than property and, therefore, not general intangibles. In Bo-rich, a private party sued the Public Utility Commissioner in an effort to force the Commissioner to transfer an authority without decreasing its scope. The Commissioner had earlier approved the transfer but limited the breadth of the authority. The Oregon Court of Appeals affirmed the Commissioner’s decision, stating that the operating authority was a privilege and not a property right. The case is, however, distinguishable from the case at bar, which involves a dispute between private parties.
In Borich, the private party was attempting to assert a property right against the government. Courts finding that licenses and other governmentally granted privileges constitute property for purposes of the general intangibles provision consistently differentiate the Borich situation from that of a purely private credit transaction. These courts reason that, although a license is a privilege vis-a-vis the public authority, it has the qualities of a property right as to third parties. See, e.g., In re Sunberg, 729 F.2d 561, 563 (8th Cir.1984) (“[s]uch ‘anti-assignment’ provisions are intended to insulate the government from conflicting claims over payments, not to preempt state commercial law as between third parties.”); Gibson v. Alaska Alcoholic Beverage Control Board, 377 F.Supp. 151, 154 (D.Alaska 1974). See also In re Metric Metals Intern., Inc., 20 B.R. 633, 637 (Bkrtcy.S.D.N.Y.1981). Therefore, the operating authorities are general intangibles covered by Freightliner’s security agreement.
Finally, under ORS 79.3020(1), a security interest in general intangibles is perfected by the filing of. a financing statement. On August 6, 1982, Freightliner filed a financing statement covering, among other things, debtor’s general intangibles. The Trustee contends that in order to perfect its interest in debtor’s operating authorities, Freightliner was required to comply with ORS 767.186.[7] We disagree. *370 Freightliner met the only requirement necessary for perfecting a security interest in debtor’s operating authorities — it filed a financing statement covering all of debtor’s general intangibles. Without deciding whether Freightliner received approval from the Public Utilities Commission under ORS 767.186, we hold that such approval was unnecessary for perfection of its security interest.
AFFIRMED.

. ORS 481.413 in effect at the times relevant to this case provided, in pertinent part:
(2) Except as provided in subsection (3) of this section, * * * the exclusive means of perfecting a security interest in a vehicle covered by a certificate of title is by application for and notation of the security interest on the certificate of title in accordance with the provisions of this chapter.
In recognition of problems created by notation requirements, the 1983 Oregon Legislature amended ORS 481.413 to provide that a security interest in a vehicle covered by a certificate of title is perfected upon receipt by the Oregon Department of Motor Vehicles of an application for a certificate of title noting a secured party’s interest. Or.Laws 1983, ch. 644 (SB 303). The Motor Vehicle’s Code as now amended is codified in ORS title 59.

.79.3050 When possession by secured party perfects security interest without filing. A security interest in letters of credit and advices of credit as provided in ORS 75.1160(2)(a), goods, instruments (other than certificated securities), money, negotiable documents or chattel paper may be perfected by the secured party’s taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party’s interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in ORS 79.1010 to 79.5070. The security interest may be otherwise perfected as provided in ORS 79.1010 to 79.5070 before or after the period of possession by the secured party.

. 11 U.S.C. § 363(c)(2) provides:
(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
(A) each entity that has an interest in such cash collateral consents; or
(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

. On the other hand, if a debtor gets a creditor’s consent or a court order, the creditor loses his right to trace proceeds. In re Lovelady, 21 B.R. 182, 184-85 (Bkrtcy.D.Or.1982).

. Freightliner argues that the wording of the cash collateral order itself gave it a security interest in all of debtor’s accounts receivable and the order’s terms were operative from the filing of the petition. Because we find that Freightliner properly received a security interest in all of debtor’s pre- and post-petition accounts receivable, we need not address this issue.

. As defined in ORS 79.1060(2):
"General Intangibles” means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money.

. Under Oregon law, an intrastate operating authority is transferable only in accordance with the procedures contained in ORS 767.135. ORS 767.186. Applications for transfer must be submitted to the Public Utility Commissioner, who gives notice to all applicants for the operating *370 authority and, if any applicant protests the transfer, conducts a hearing on the application. Interstate certificates of transportation authority are automatically issued upon proof of Interstate Commerce Commission approval and evidence of insurance. ORS 767.155. A certificate issued by the Interstate Commerce Commission may be transferred subject to compliance with federal regulations. 49 U.S.C. § 10926(1).