In re **HOTEL SIERRA VISTA LIMITED PARTNERSHIP, an Arizona limited partnership, Debtor.**

**CHEQUERS INVESTMENT ASSOCIATES, a Texas General Partnership, Plaintiff–Appellant,**

v.

**HOTEL SIERRA VISTA LIMITED PARTNERSHIP, an Arizona limited partnership, Defendant–Appellee.**

No. 95–17381.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1997.

Decided April 29, 1997.

Samuel Stricklin, Sheinfeld, Maley and Kay, Dallas, TX, for plaintiff–appellant.

Jeffrey H. Greenberg, Greenberg Felker, Altfeld Greenberg & Battaile, Tucson, AZ, for defendant–appellee.

Before ALARCON, BEEZER and O'SCANNLAIN, Circuit Judges.

BEEZER, Circuit Judge:

Chequers Investment Associates ("Chequers") appeals the district court's affirmance of a bankruptcy court order confirming Hotel Sierra Vista Limited Partnership's ("HSVLP") Chapter 11 plan for reorganization. Chequers asserts the district court erred in affirming: 1) the bankruptcy court's conclusion that Chequers liens on hotel room revenues did not survive HSVLP's Chapter 11 petition because Chequers failed to meet its burden for establishing its right to those revenues; and 2) the bankruptcy court's or-

der confirming HSVLP's plan because the plan does not treat Chequers fairly and equitably. We have jurisdiction pursuant to 28 U.S.C. § 158(b), and we reverse.

## I

HSVLP built a 151–room hotel in Sierra Vista, Arizona, that opened for business in 1986 as a Ramada Inn franchise. Additional hotel facilities include a lounge, a restaurant, a ballroom, banquet rooms and meeting rooms.

HSVLP financed the hotel's construction by borrowing a total of $6,196,000 in two secured loans from City Federal Savings and Loan ("City Federal"). HSVLP defaulted on its loans in 1990.

The Resolution Trust Corporation ("RTC") became City Federal's successor when City Federal became insolvent in 1991. The RTC subsequently sold a $130,000,000 pool of loans, a portion of which were City Federal's

loans to HSVLP, to Chequers, a Texas-based investment group. Chequers demanded payment in full from HSVLP and commenced foreclosure proceedings. HSVLP sought Chapter 11 protection in June 1993.

In August 1993, Chequers moved to sequester the hotel's post-petition room revenues. Chequers maintained that these revenues were "cash collateral" within the meaning of 11 U.S.C. § 363(a). The bankruptcy court heard Chequers's motion in September 1993, but explicitly deferred deciding whether the room revenues were cash collateral.[1] The court ordered HSVLP to sequester the room revenues and meet its operating expenses from those funds.

Objecting to some expenditures made by the hotel, Chequers moved for an order governing HSVLP's use of post-petition hotel room revenues in December 1993. At the close of a January 1994 hearing, the bankruptcy court again deferred deciding whether the room revenues were cash collateral.[2]

---

1. The transcript of the September hearing reads in relevant part:

   THE COURT: Well, let me ask you this question: Do you think it would make any sense to treat this cash as cash collateral for now, defer this issue, let the debtors file their plan. I mean, the creditor votes for it—
   MR. GREENBERG [Counsel for HSVLP]: Well, Your Honor, I think there's a lot in your suggestion that I can agree to. I think I can agree to sequester the money. I won't agree that it's cash collateral.
   THE COURT: I'm not—I'm saying treat it as if it were cash collateral.
   MR. GREENBERG: Sequester the money. Meet the hotel's—
   THE COURT: Meet the operating expenses.
   MR. GREENBERG:—operating expenses. File all monthly reports. The money's not going anywhere, and I'm sure Mr. Battaile [Counsel for Chequers] knows that it's all accounted for ... So if Mr. Battaile will agree to that disposition of deferring this until later, I'm certainly willing to sit down.
   THE COURT: Okay, What do you think, Mr. Battaile?
   MR. BATTAILE: Judge, I'll agree to that position at this time. As long as that money doesn't go anywhere—
   THE COURT: So ordered.
   MR. BATTAILE:—I'm comfortable deferring it.

2. At the time of these hearings in the bankruptcy court, the state of the law on the question of whether hotel room revenues are "rents" within the meaning of § 363(a) can only be described as incoherent.

HSVLP relied upon the Bankruptcy Appellate Panel's ("BAP") decision in *In re Northview Corp.*, 130 B.R. 543, 548 (9th Cir. BAP 1991), which held that post-petition room revenues were not "rents" within the meaning of 11 U.S.C. § 363(a). The BAP noted that the "weight of authority" held that hotel room revenues were not "rents." *Id.* at 546 n. 4. Two bankruptcy decisions in the district of Arizona followed *Northview*. *See In re Thunderbird Inn, Inc.* 151 B.R. 224, 226–27 (Bankr.D.Ariz.1993); *In re General Associated Investors Limited Partnership*, 150 B.R. 756, 759–62 (Bankr.D.Ariz. 1993).

Chequers relied on another bankruptcy decision for the district of Arizona that refused to follow *Northview*. *See In re Everett Home Town Limited Partnership*, 146 B.R. 453, 456 (Bankr. D.Ariz.1992). In addition, Chequers pointed to a bankruptcy decision in the Northern District of California that declined to follow *Northview*. *See In re S.F. Drake Hotel Associates*, 131 B.R. 156, 158–61 (Bankr.N.D.Cal.1991). Although it acknowledged its decision was against the weight of authority, the district court for the Northern District of California later affirmed the bankruptcy court's decision. *See In re S.F. Drake Hotel Associates*, 147 B.R. 538, 539–40 (N.D.Cal.1992).

The parties disagreed sharply over the precedential weight of BAP decisions on the bankruptcy courts that compose our circuit. *See Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir.1990) (expressing uncertainty over "the authoritative effect of a BAP decision").

The transcript of the January hearing reads in relevant part:

Chequers moved a third time for an order in February 1994. The bankruptcy court deferred ruling on the legal question at a March hearing.

HSVLP filed its initial plan of reorganization in October 1993. HSVLP amended its plan seven times between November 1993 and the June 1994 confirmation hearing. At the time of its initial filing, HSVLP's principal assets were the hotel itself, whose value the parties estimated and stipulated to be $2,200,000, together with $625,844 evidencing accumulated pre-petition revenues. Between the time HSVLP filed its petition and the December 1994 plan confirmation, the hotel received an additional $812,425 in net revenues.

After HSVLP proposed its plan, Chequers elected to secure its entire claim pursuant to 11 U.S.C. § 1111(b). Chequers voted to reject HSVLP's plan. The bankruptcy court confirmed the plan over Chequers's objections by using the "cramdown" alternative of 11 U.S.C. § 1129(b).

In its order confirming the plan, the bankruptcy court concluded that the post-petition room revenues were cash collateral. The bankruptcy court nevertheless denied Chequers a secured interest in the post-petition hotel revenues. The bankruptcy court determined that Chequers had not met the burden of proving the "extent" of its interest as required by 11 U.S.C. § 363(o)(2).

> THE COURT: ... With respect to the cash collateral or the property denominated as cash collateral and in dispute, what I'd like to do with that fund is not rule on whether it is or is not cash collateral at this time, but I would ask the debtor to use that money only for necessary and ordinary operating expenses.
>
> If there are problems that the parties can't resolve, bring that back before me on a specific dispute and I'll resolve it
> ...
> MR. GREENBERG [Counsel to HSVLP]: I have no problem with that, Your Honor.
> THE COURT: So that'll be my order.
> MR. GREENBERG: That was ordered by [another bankruptcy judge] back in September. And so I have no problem with that.
> THE COURT: And then we'll decide what to do with these funds when we get to confirmation.
> MR. GREENBERG: Does that mean that the Court is not going to rule on the issue of

Chequers appealed the bankruptcy court's order confirming the plan to the district court. The district court affirmed.

## II

■■■ We review de novo the district court's decision on an appeal from the bankruptcy court. *In re Sternberg,* 85 F.3d 1400, 1404 (9th Cir.1996). Conclusions of law made by the bankruptcy court are reviewed de novo. *In re Alsberg,* 68 F.3d 312, 314 (9th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996). The bankruptcy court's findings of fact are reviewed for clear error. *Id.*

## III

Sometimes yesterday's confusion resolves itself into today's easily-applied rule of law. Between the June 1994 confirmation hearing and the bankruptcy court's December 1994 order, Congress amended the statutory definition of cash collateral to clarify that the term "rents" included hotel room revenues.[3] On this basis, the bankruptcy court concluded that the hotel's post-petition room revenues were cash collateral. This development places us in an unusual position, however, one where we must assess the actions undertaken by the parties and the bankruptcy court in this case in light of yesterday's confusion.

> whether or not this is cash collateral until we get to confirmation?
> THE COURT: That's correct. I want to read these cases
> ... If I'm able to rule after reading the cases, I'll do it.

3. 11 U.S.C. § 363(a), as amended, provides:

In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

After its Chapter 11 filing and through the time of the bankruptcy court's order confirming its plan, HSVLP deposited all revenues received from the hotel, including those attributable to room occupancy, in a single money market account. Chequers contends that HSVLP's trustee violated 11 U.S.C. § 363(c)(4) by so doing. That section provides that "... the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control." 11 U.S.C. § 363(c)(4).

Because of the then uncertain status of room revenues, the bankruptcy court deferred deciding the legal question or ordering HSVLP to follow the restrictions imposed by § 363(c)(4). Instead, the bankruptcy court required HSVLP to sequester the hotel's revenues and meet its operating expenses using those funds. The bankruptcy court determined ultimately that Chequers's secured interest in post-petition room revenues did not survive post-petition because Chequers failed to meet its burden of proving the "extent" of its interest in those revenues. *See* 11 U.S.C. § 363(o)(2).

■ Past uncertainty aside, Chequers asserts that HSVLP's commingling of room revenues with other revenues in and of itself constitutes reversible error. Because of HSVLP's commingling, Chequers contends that, as a matter of equity, we should shift the burden of proof under § 363(o)(2) and require HSVLP to prove the amount of revenues that are free of Chequers's claim. Chequers relies on our opinion in *Freightliner Market Development Corp. v. Silver Wheel Freightlines, Inc.*, 823 F.2d 362 (9th Cir. 1987) for this proposition. We reject application of *Freightliner* in this matter.

In *Freightliner*, we considered a debtor's use of cash collateral in violation of 11 U.S.C. § 363(c)(2) in the context of a creditor's request for relief from an automatic stay under 11 U.S.C. § 362(g). *Id.* at 368. The burdens of proof in § 362(g) share a parallel organization with those in § 363(o).[4]

The bankruptcy court in *Freightliner* concluded that the debtor violated § 363(c)(2) because the trustee "used cash collateral derived from collection of accounts receivable purportedly covered by [the creditor's] security interest without a court order or [the creditor's] consent."[5] *Freightliner*, 823 F.2d at 367. The bankruptcy court found that the trustee's use of cash collateral "prevented the creditor from tracing the proceeds of [the creditor's] collateral or establishing the level of [the creditor's] receivables collateral at the time of the filing of the bankruptcy proceeding." *Id.* at 367–68.

Because of the trustee's violation of § 363(c)(2), the bankruptcy court awarded the creditor an interest in *all* of the debtor's pre-petition and post-petition accounts receivable. *Id.* at 368. The bankruptcy court then shifted the burden to the debtor to prove that cash collateral was not being used after entry of its order prohibiting such use. *Id.* The statutory violation was not solely the cause of the burden shift. Rather,

[t]he basis for the shift was the [bankruptcy] court's view that [the] debtor improperly used cash collateral in violation of § 363(c)(2). The [bankruptcy] court concluded that the burden of proof on the issue of tracing the accounts receivable was most fairly placed on the Trustee because his predecessor's (debtor's) breach of

---

**4.** Section 362(g) provides:

In any hearing under subsection (d) or (e) of this section concerning relief form the stay of any act under subsection (a) of this section-
(1) The party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
(2) The party opposing such relief has the burden of proof on all other issues.
Section 363(o) provides:
In any hearing under this section-
(1) the trustee has the burden of proof on the issue of adequate protection; and

(2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

**5.** Section 363(c)(2) provides:

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless-
(A) each entity that has an interest in such cash collateral consents; or
(B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

duty resulted in the inability to trace the proceeds derived therefrom.

*Id.*

We do not adopt the equitable remedy of shifting the burden under § 363(*o*)(2) for two reasons. First, because of the unsettled nature of the law on the question whether hotel room revenues constituted "rents" within the meaning of § 363(a), the bankruptcy court declined to enter a cash collateral order. To maintain the status quo, HSVLP complied with all the bankruptcy court ordered it to do, namely to sequester its revenues and meet operating expenses out of post-petition revenues. Second, nothing in the record suggests that HSVLP's failure to segregate and account resulted in the inability of either party to establish the validity and extent of its interest in the sequestered funds.

The creditor in *Freightliner* faced losing its security interest in post-petition revenues because the debtor's actions denied the creditor the ability to meet his burden. Nothing in the record in this case suggests that HSVLP's actions prevented Chequers from proving the extent of its interest. Chequers's argument can be summarized in this manner: because HSVLP failed to undertake efforts, as a precautionary measure owing to the duty imposed by § 363(c)(4), to segregate and account for revenues that ultimately were determined to be cash collateral, we should shift the burden of proof under § 363(*o*)(2) and remand this case. This we decline to do.

## IV

Our refusal to shift the burden does not end our inquiry, however. The bankruptcy court found that Chequers had failed to meet its burden of proving the "extent" of its interest under § 363(*o*)(2). Chequers argues that it met its burden. We agree.

■ We review the bankruptcy court's finding for clear error. *In re Lazar*, 83 F.3d 306, 308 (9th Cir.1996). A party seeking to prove the "extent" of its interest under § 363(*o*)(2) must do two things. First, as a preliminary matter, the party must prove that it holds a perfected security interest in post-petition revenues to which its liens still

rightly attach. *See In re Days California Riverside Limited Partnership*, 27 F.3d 374, 377 (9th Cir.1994) ("*Days California* "). Second, a party must prove the amount of money to which its liens attach. *See* 11 U.S.C. § 363(*o*)(2). Our decision in *Days California* provides the formula for determining the amount of revenues to which liens may survive post-petition. In *Days California*, we stated that

> Hotel methods of accounting will permit the identification of the revenues generated by the rooms and those generated by services. Determination of the net revenues will require allocation of direct and indirect expenses in proportion to each category of revenue.

*Id.* at 377. Thus, proving the extent of one's interest involves submitting evidence that enables the bankruptcy court to determine the sum to which the party asserting the security interest is entitled. *See id.*

■ Our opinion in *Days California* was filed the same day that the confirmation hearing took place in this case. Thus, the bankruptcy court and the parties could not and did not have knowledge of the formula we announced that day. The trustee's financial reports, which were considered by the bankruptcy court, clearly identified gross room revenues. The trustee's reports were insufficient, however, for the bankruptcy court to precisely determine which indirect expenses of hotel operations should be allocated to and subtracted from gross room revenues. The bankruptcy court, which was aware of our decision in *Days California* when it issued its decision in December 1994, did not rely on the formula we enunciated in *Days California* when it found that Chequers failed to meet its burden.

Equity demands in these unusual circumstances that we review Chequers's evidentiary efforts without regard to the *Days California* formula. The question, then, is whether Chequers proved the "extent" of its interest within the meaning of § 363(*o*)(2). We hold the bankruptcy court's finding was clearly erroneous. Chequers submitted documents proving its unquestioned entitlement to sequestered room revenues at the confirmation hearing.

Documentary evidence introduced at the confirmation hearing with respect to the extent of Chequers's post-petition security interest included both a copy of a valid security instrument and accounting statements reflecting post-petition gross room revenues. Because of the unusual timing of events in this case, neither the parties nor the bankruptcy court attempted to apply the *Days California* formula to the hotel's revenues and expenses. Equity requires that the court and the parties have the opportunity to allocate direct and indirect expenses to each category of revenues listed on the trustee's reports. *See Days California*, 27 F.3d at 377. This will result in a net diminution of gross room revenues to which Chequers's liens attach after petition, but will be consistent with effectuating the burden structure of 11 U.S.C. § 363(*o*)(2) and our decision in *Days California*.

## V

*Days California* requires Chequers to prove the exact amount of its interest in HSVLP's post-petition room revenues through application of the *Days California* formula. A new hearing in this case shall be conducted to apply that formula. We remand this case to the district court for proceedings consistent with this opinion. Further, we grant the district court leave to amend HSVLP's plan of reorganization as necessary so that the plan may take into account Chequers's lien on hotel room revenues.

**REVERSED AND REMANDED.**