**In re TRI–GROWTH CENTRE CITY, LTD. dba Downtown Budget Motel, Debtor-in-Possession.**

**Bankruptcy No. 91–08548–M11.**

United States Bankruptcy Court, S.D. California.

Oct. 11, 1991.

Michael P. Fedynyshyn, Gary B. Elmer, Wittman, Fedynyshyn & Roberts, San Diego, Cal., for debtor-in-possession.

Daniel C. Minteer, Sue J. Hodges, Matthew S. Walker, Pillsbury, Madison & Sutro, San Diego, Cal., for creditor (Imperial Bank).

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

### I.

### INTRODUCTION

Creditor Imperial Bank ("Imperial") submitted its ex parte application for order enjoining use of income from the real property known as Downtown Budget Motel. The ex parte application raises two issues. First, did Imperial obtain a security interest in the hotel revenues by virtue of the assignment of rents provision in the deed of trust or by virtue of its UCC–1 Financing Statement ("UCC–1")? Second, if Imperial did obtain a security interest, does that interest continue in post-petition hotel revenues of the debtor?

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1) and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to § 157(b)(2)(A) and (M).

### II.

### FACTS

Tri–Growth Centre City, Ltd. is a California limited partnership whose primary asset is the Downtown Budget Motel located at 1835 Columbia Street, San Diego, California. On January 5, 1987, Tri–Growth executed a note in favor of Imperial in an amount in excess of $2,383,247.18. To secure the loan, Tri–Growth executed in Imperial's favor a deed of trust which contained an assignment of rents clause. The clause provided that rents, issues and profits from the hotel real property secured the debt. The deed of trust was properly recorded.

Imperial is further secured by certain personal property described in a perfected General Security Agreement. Section C of the General Security Agreement provides in pertinent part:

All personal property of every kind including furniture, fixtures, equipment and inventory of every kind and nature now owned or hereafter acquired by obligor, and all proceeds thereof, intended to be or actually located at, upon or about or attached or related to the real property known as 1835 Columbia Street, San Diego, CA 92101 and legally described as set forth below....

Imperial filed a UCC–1 Financing Statement covering identical collateral.

**526**

On or about July 29, 1991 Tri–Growth filed Chapter 11. As of September 6, 1991, Tri–Growth has been in default in its obligation to the bank for over six months. Imperial claims that the room revenues generated by the hotel debtor constitute "cash collateral" which cannot be used without providing adequate protection to the bank.

## III.

### DISCUSSION

■ Imperial claims a right to the room revenues by virtue of two different security agreements. On the one hand, Imperial claims that the revenues received by the debtor are "rents, issues and profits" and, hence cash collateral by virtue of an assignment of rents clause 'in the deed of trust. However, this view is contrary to California authority.

In *In re Ashkenazy Enterprises, Inc.*, 94 B.R. 645 (Bankr.C.D.Cal.1986), the lenders held promissory notes secured by deeds of trust in the hotels. The deeds of trust gave the lenders a security interest in the hotel and a security interest in the rents, issues, and profits of the hotels. The court held that the revenues from the hotels did not constitute rents and therefore could not be secured by an assignment of rents provision in the deed of trust. *Id.* at 646. Thus, Imperial has no security interest in the hotel revenues by virtue of the assignment of rents clause in its deed of trust.

■ The *Ashkenazy* court viewed the revenues generated by "hotel guests as proceeds of accounts resulting from payments for goods and services." *Id.* at 647. Therefore, a UCC–1 Financing Statement must be filed to perfect a security interest in the accounts. *Id.* at 647. Imperial also claims that it has a perfected security interest in the revenues by virtue of its UCC–1 filing.

■ Imperial filed its financing statement describing the collateral as:

All personal property of every kind including furniture, fixtures, equipment and inventory of every kind and nature

now owned or hereafter acquired by debtor, and all proceeds thereof....

California Commercial Code § 9402(1) states that a financing statement is sufficient if it contains a statement indicating the types of collateral or describing the items of collateral. Imperial's description is clearly not by item. Moreover, none of the types of property described in the financing statement could reasonably be understood to cover room revenues.

Because the financing statement operates to give notice to third parties of the possible claims of others, it must reasonably identify the property described. Nowhere does Imperial mention accounts in its financing statement. Thus, because of the inadequate description of the collateral, Imperial has no security interest in the hotel revenues by virtue of its UCC–1 filing.

■ Even if Imperial did have a valid security interest in the hotel revenues, that interest would not extend to post-petition revenues. *In re Northview Corporation*, 130 B.R. 543, (9th Cir. BAP 1991). Section 552(b) permits security agreements to remain in effect as to after-acquired property which is "proceeds, product, offspring, rents, or profits" of pre-petition collateral. In *In re Northview Corporation*, the Bankruptcy Appellate Panel held that "none of the exceptions in § 552(b) apply to hotel revenues generated after the bankruptcy filing." *Id.* at 548. Accordingly, § 552(b) prevents Imperial's claim to the debtor's hotel revenues generated post-petition.

### CONCLUSION

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.