**In re THUNDERBIRD INN, INC., dba Best Western Thunderbird Suites, Debtor.**

**Bankruptcy No. B–92–12799–PHX–GBN.**

United States Bankruptcy Court, D. Arizona.

Feb. 17, 1993.

Carolyn J. Johnsen, Hebert, Schenk, Johnsen & Dake, P.C., Phoenix, AZ, for debtor.

James E. Shively, Teilborg, Sanders & Parks, P.C., Phoenix, AZ, for Resolution Trust Corp. as Receiver for Pima Federal Sav. and Loan Assn.

Adrianne Kalyna, U.S. Trustee, Phoenix, AZ.

## MEMORANDUM OF DECISION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

This contested matter arises following the motion of Chapter 11 debtor in possession Thunderbird Inn, Inc. ("debtor") to use revenues that may be the cash collateral of secured creditor Resolution Trust Corporation ("RTC"). This Court will grant the motion, finding, under Bankruptcy Appellate Panel ("BAP") authority, that security interests in post-petition hotel revenues are cut off under § 552(a). 11 U.S.C. § 552(a).

### I

On June 28, 1984, William and Annetta Arthur, predecessors in interest to debtor, executed a trust deed, assignment of rent and security agreement for Pima Savings and Loan Association ("Pima") as security for a loan for $4½ million.

Paragraph "E", page 2, of the trust deed granted Pima a security interest in *inter alia:* "all of the rents, royalties, issues, profits, revenue, income and other benefits of the mortgaged property, or arising from the use of (sic) enjoyment of all or any portion thereof or from any lease or agreement pertaining thereto...." Neither party produced a copy of the trust deed, note or other pertinent documents. The Court's citation of the trust deed language is from the RTC brief. Docket No. 20, p. 2.

In a demand for sequestration of cash collateral, the RTC, as Pima's successor, asserted it properly recorded its security interests. Docket No. 4. According to debtor, the hotel is located on approximately 2.89 acres, contains about 70,000 square feet, including 120 rooms, 1,500 square feet of conference area, a restaurant and lounge. All rooms are suites. The average daily room rate is $60. Docket No. 12, p. 2.

Income for 1991 is itemized by debtor as $1,548,939 from the rooms, $231,026 from food and beverage operations, $71,509 from telephone charges and $34,520 in miscellaneous income, for a total of $1,885,992. *Supra,* pp. 2–3. Debtor argues the revenues generated from the hotel are not cash collateral of the RTC, under *Greyhound Real Estate Finance Co. v. Official Unsecured Creditors' Committee (In re Northview Corp.),* 130 B.R. 543 (Bankr. 9th Cir. 1991). Alternatively, debtor argues even if the revenues are cash collateral, they may be used since the RTC is adequately protected by use of the revenues to preserve the property through continued operation of the hotel.

The secured creditor opposes such use, arguing decisions holding that hotel room revenues are cash collateral are better reasoned. *See In re Everett Home Town Limited Partnership,* 146 B.R. 453 (Bankr. D.Ariz.1992).

The absence of pertinent documents makes it more difficult to determine the scope of the security interest in restaurant income, telephone income, other income and hotel revenues. Based on the parties' briefs and arguments, however, there is sufficient information regarding the trust deed to determine whether creditor has a cash collateral interest in hotel income.

██ Assuming creditor correctly quoted the language in the trust deed, the parties here intended to create a security interest in hotel revenues. *See In re Northview Corp., supra,* 130 B.R. at 546–47, (noting the assignment of rents provision contained words such as "income, revenues, fees, room sales" and thus the parties intended to create a security interest in "room sales" and other hotel revenues.) Debtor does not dispute that creditor perfected its interest. Given this, the issue is whether the RTC holds a cash collateral interest in income generated postpetition.

## II

Section 552(a) provides property acquired by the estate post-petition is not subject to any lien resulting from a pre-petition security agreement. This principle is limited by § 552(b), which permits security agreements to remain effective on after-acquired property that constitutes "proceeds, product, offspring, rents or profits" of pre-petition collateral.

The BAP's *Northview Corp.* decision appears controlling on whether the creditor's security interest in hotel revenues continues post-petition. *Northview* held hotel revenues are accounts, not rents. *Id.* at 548. Since none of the exceptions in § 552(b) covers "hotel revenues or accounts," a security interest in such property does not extend to revenues earned post-petition. *Id.* Thus, if *Northview* is followed, revenues generated from debtor's hotel would not be cash collateral. *See In re Tri–Growth Centre City Ltd.*, 133 B.R. 524 (Bankr.S.D.Cal.1991).

In *Tri–Growth Centre City*, the court followed *Northview* and held a valid security interest in hotel revenues, would not extend post-petition. 133 B.R. at 526. As that court noted, *Northview* held none of the exceptions in § 552(b) apply to hotel revenues generated post-petition. *Id.* Accordingly, § 552(b) prevents a creditor's claim to such property.

## III

Notwithstanding this, the creditor in effect argues this Court should not follow *Northview*. Creditor does not claim this case is distinguishable from *Northview*. Rather, the creditor submits the better reasoned view is stated by *In re Everett Home Town Limited Partnership, supra.* Docket No. 20, at 2–3. *Everett* devoted considerable analysis to the principle that hotel revenues constitute rent. 146 B.R. at 456–58. Agreement was expressed with the reasoning of *In re S.F. Drake Hotel Associates*, 131 B.R. 156 (Bankr.N.D.Cal. 1991). *Everett* reviewed the Arizona Commercial Code and concluded hotel revenues are not "accounts." *Id.* at 457. Having determined that hotel revenues are not ac-

counts, *Everett* opined that courts that concluded hotel revenues are not rents, based on the distinction between a license and a lease, take too narrow a view. *Everett* further held the terms in § 552(b) are defined in their general sense. *Id.* at 457–58.

*Drake* does not reference *Northview*. However, the decision was appealed to the United States District Court, which reviewed *Drake* in light of *Northview*. The District Court affirmed, finding *Northview* did not persuade the court to abandon the reasoning of the lower court. *S.F. Drake Hotel Associates v. Security Pacific National Bank (In re S.F. Drake Hotel Associates)*, 147 B.R. 538 (N.D.Cal.1992). The District Court acknowledged the weight of authority holds hotel revenues do not fall within the exceptions contained in § 552(b). Its decision to affirm was based on two factors. First, BAP decisions are not binding on district courts. Second, *Northview* held, without discussion, that hotel revenues are not rents, proceeds or profits. 147 B.R. at 539–40. The District Court was persuaded to follow the minority view that a common sense interpretation of § 552(b) yields an answer contrary to that reached by others. *Id.*

*Drake* is expressly disapproved by another California District Court in *Financial Security Assurance, Inc. v. Days California Riverside Ltd. Partnership (In re Days California La Palma Ltd. Partnership, et al.)*, 1992 US.DIST.LEXIS 17363 (E.D.Cal.1992). Affirming the bankruptcy court, the District Court held that the BAP decision in *Northview*, while not binding on an Article III Court, should be closely scrutinized before reaching a contrary ruling. LEXIS 17363 at 4. Such deference is due, given the BAP was established by the Judicial Council to develop a uniform, consistent body of law throughout the Circuit. *Id.*

Identifying *Northview* as the majority rule, *Days California* nevertheless conducted an independent review of California law. *Id.* at n. 4. The court concluded that since the relationship of the hotel and guests was not that of landlord and tenant, fees paid for use of the rooms were not

"rent." *Id.* at 5. Rather, hotel revenues are payment for services, temporary lodging and related amenities and thus are "accounts" under the Uniform Commercial Code rather than "rents" under real property law. *Id.* at 6. Accordingly, the accounts are cut off as a post-petition security interest under § 552(a) and not excepted under § 552(b).

### IV

*Everett's* position that the terms used in § 552(b) should be broadly defined runs contrary to the BAP's narrow definitions in *Northview.* *Everett* did not distinguish or harmonize *Northview.*

This Court believes the *Northview* BAP decision should be followed. First, creditor did not offer a basis for distinguishing *Northview.* Second, the burden of proving a lien survives post-petition, notwithstanding § 552(a), is upon the secured party. *Days California, supra,* at 4; 4 *Collier on Bankruptcy* ¶ 552.-01, at 552–5 to 552–6 (15th ed. 1992). Neither party has suggested there is any meaningful difference between the California UCC and the Arizona UCC, insofar as the definition of "account" is concerned. Finally, BAP decisions are binding precedent on all bankruptcy courts within the Ninth Circuit in the absence of contrary authority from the district court in which the bankruptcy court sits. *In re Proudfoot,* 144 B.R. 876, 879 (Bankr. 9th Cir. 1992).

Absent Arizona District Court authority, this Court will follow *Northview* and hold creditor lacks an interest in post-petition hotel revenues.

### V

Accordingly, the debtor's motion for use of cash collateral is granted. Debtor will report its post-petition operations in the form of monthly reports promulgated by the United States Trustee.