**UNITED STATES of America, Appellant,**

v.

**Howard C. HAYES and Gladys I. Hayes, his wife, Stanwood P. Whiteley and Margaret Whiteley, his wife, Appellees.**

**No. 20374.**

United States Court of Appeals Ninth Circuit.

Dec. 8, 1966.

John W. Douglas, Asst. Atty. Gen., Morton Hollander, Walter H. Fleischer, Martin Jacobs, Attys., Civil Div., U. S. Dept. of Justice, Washington, D. C., Richard L. McVeigh, U. S. Atty., Anchorage, Alaska, for appellant.

Robert Boochever, of Faulkner, Banfield, Boochever & Doogan, Juneau, Alaska, for appellees.

Before JERTBERG and ELY, Circuit Judges, and FOLEY, Jr., District Judge.

ELY, Circuit Judge:

This appeal is from a judgment of dismissal entered by the District Court following a trial. The appellant, plaintiff below, had sought recovery of the unpaid portion of an obligation which had been guaranteed by appellees. The obligation arose from a loan made by the Reconstruction Finance Corporation, whose functions have since been transferred to the Small Business Adminstration. 22 Fed.Reg. 4633, 71 Stat. 647 (1957). The jurisdiction of the District Court is fixed by 28 U.S.C. § 1345, and our jurisdiction is conferred by 28 U.S.C. § 1291.

On May 28, 1953, Gastineau Corporation and Chicagof Corporation were the two partners of a partnership known as Hayes and Whiteley Enterprises. On the mentioned date they, as copartners, executed a promissory note in favor of the Reconstruction Finance Corporation. The note called for the payment of $49,-200, and its maturity date was December 15, 1955. It was secured by a first mortgage on certain land and chattels owned by the partnership. The principal officers of the debtor corporations were Howard C. Hayes and Stanwood P. Whiteley, and on the date of the note's execution, they, together with their wives, executed a written guaranty of the obligation.

After the debt was reduced by a few payments, the copartnership fell into financial difficulty and was adjudicated a bankrupt. The Small Business Administration, as assignee of the Reconstruction Finance Corporation, instituted suit upon the note. The two partner corporations, although served, took no action in defense and defaulted. The trustee of the bankrupt partnership entered a general appearance, but, in effect, consented to the judgment which was sought and, on April 5, 1958, obtained. The judgment, in the amount of $48,983.72,[1] included the unpaid principal, the accrued interest, $4,000 in attorney's fees, and $4,968.49 to reimburse the plaintiff in that suit for "care and preservation of the mortgaged property." The appellee guarantors were not joined as defendants in the suit which resulted in this judgment. They claim that Mr. Hayes and Mr. Whiteley had been told by the "receiver" to stay away from the mortgaged property, that they had assisted the Reconstruction Finance Corporation by furnishing á requested affidavit, and that they abandoned interest in the suit against the note's principal obligors when one of them was told by a representative of the Reconstruction Finance Corporation that " * * * as long as the property was so badly dissipated, he could see no way * * * [R.F.C.] * * * could hold * * * [them] * * * personally responsible."

In its brief in our court, the appellant concedes that "During the time that the property had been under the control of the Trustee, it had depreciated in value, through vandalism and theft, and the property did not satisfy the judgment in full." After the proceeds of the foreclosure[2] had been applied to the judgment debt, there remained, according to a Return on Execution filed on June 30,

---

1. This amount, $48,983.72, is itemized in the District Court's Finding of Fact number 4 and found to have been the total amount of the judgment in Finding of Fact number 5. It conforms with the judgment which was introduced as plaintiff's Exhibit C although it is inconsistent with a recitation in paragraph (4) of the "STATEMENT OF ADMITTED FACTS" in the court's "PRE-TRIAL ORDER" that the judgment was for the sum of $58,075.04. This latter amount appears to have represented a tax obligation for which the United States of America had attached a lien upon the mortgaged property. The administrator of the Small Business Administration, plaintiff in the original suit, had named the United States as a defendant.

2. The successful bid, made by the Small Business Administration itself, was only $16,500.

1958, an unsatisfied balance of $30,691.-67. Over three years thereafter, in September, 1962, the plaintiff instituted the present action.[3] In paragraph V of its complaint, it alleged "That the Judgment * * * [of April 5, 1958] * * * remains unpaid in the principal amount of $30,691.57 together with interest accrued to the 30th day of August, 1962, in the amount of $7,811.00 together with interest at the rate of six (6%) percent per annum from the 30th day of August, 1962 until fully paid." The appellees denied the allegation. They also pleaded that the action was barred by an Alaskan statute of limitations and that an authorized representative of the plaintiff had orally released them from liability under the guaranty agreement.

In connection with a pre-trial conference conducted by the District Court, the appellant submitted a pre-trial memorandum which, among other things, recited, "Plaintiff expects to prove the allegations set forth in its complaint which are not admitted by the defendant's answer to wit: paragraph 5 and 6."

When, at the commencement of the trial, the district judge remarked, " * * * the contested issues of fact and law * * * are * * * first, the amount due as principal and interest to date from defendant to plaintiff * * *," the appellant's counsel commented, "I think the issues have been covered in the pre-trial memorandum, and also in the Court's present statement." Immediately thereafter, the appellant undertook to prove its case as it had represented in its pre-trial memorandum that it expected to do. It tendered a statement of account containing a self-serving declaration of the amount for which it claimed the appellees were indebted. Upon objection, the tender was rejected, and the appellant does not here challenge the correctness of the court's ruling in that respect. The appellant then produced a witness through whom it would have sought oral testimony as to the unpaid obligation, but the court, following the procedure upon which agreement had been reached at the pre-trial conference, refused to hear the testimony. The appellant had represented in its pre-trial memorandum that it would produce no witnesses.[4] It repeated this representation as the trial began. It did not request to be relieved from its commitment, it did not request a continuance, and it does not now contend that the District Court erred in refusing to permit it to examine the witness.

Following the two efforts which have been described, the appellant did not attempt further proof. The appellees offered none which pertained to the amount of remaining debt, if any, and the challenged judgment of dismissal was entered. Essentially, it was based upon the court's conclusion that the appellant had failed to meet its burden of proof.

To us, the appellant vigorously urges that the District Court erred in its conclusion that the burden of proof on the disputed issue rested upon it. Incidental to this principal contention is the claim of error on the part of the court in finding that the true evidence of the amount of the indebtedness rested primarily

---

3. On the plaintiff's complaint there is a file stamp which shows that the complaint was filed on September 24, 1962. The pre-trial order recites, in paragraph (7) of the "STATEMENT OF ADMITTED FACTS," that "For the sole purpose of establishing that defendants received a demand for payment before the filing of suit, it was stipulated that the date of filing suit was December 17, 1962."

4. Accordingly, the pre-trial order states, "Plaintiff indicated that it did not intend to call any witnesses." Recognizing that the parties might reexamine their plans as to the production of witnesses, the pre-trial order provided, "Witnesses not listed herein may be called by either party provided the names and addresses of such additional witnesses together with a brief statement of the nature or general subject matter of the testimony expected to be given by each such witness are served on opposing counsel and filed with the Clerk at least fifteen (15) days in advance of the date set for trial."

within the knowledge and control of the appellant.

The appellant invokes a rule that a judgment obtained in a suit against a principal debtor is prima facie evidence of the liability of his guarantor or surety in a subsequent suit. Our attention is particularly directed to Moses v. United States, 166 U.S. 571, 600, 17 S.Ct. 682, 41 L.Ed. 1119 (1897), Lake County, for Use and Benefit of Baxley v. Massachusetts Bonding & Insurance Co., 75 F.2d 6, 8 (5th Cir. 1935), Massachusetts B. & Ins. Co. v. Robert E. Denike, Inc., 92 F.2d 657 (3rd Cir. 1937), Commonwealth, to Use of Ulshofer v. Turner, 340 Pa. 468, 17 A.2d 352, 354 (1941), and Home Ins. Co. of New York v. Savage, 231 Mo.App. 569, 103 S.W.2d 900 (1937).

Assuming that such a rule might be sometimes applicable, we agree with the District Court that it should not be operative here. In Home Ins. Co. of New York v. Savage, supra, which appellant emphasizes, the guarantors were joined in the suit in which judgment was taken against the principal. In other cases in which it has been said that a prior judgment constitutes prima facie evidence of the liability of a guarantor in a subsequent suit, it does not appear that the judgment obligation had been reduced by payment. See, e. g., Lake County for Use and Benefit of Baxley v. Massachusetts Bonding & Insurance Co., supra. In the present case, it was shown by the appellant's own allegations that some payments had been made toward the reduction of the indebtedness established by the judgment of April, 1958.

■■■ Appellees advance another exception to the rule upon which appellant

now relies. This exception arises when the creditor's judgment against the principal, in a suit in which the guarantor is not joined, is taken by default or obtained by confession. Restatement, Security § 139(3) (1941). In the comment to the cited subsection of the Restatement, it is said, "Such a judgment against the principal does not create a rebuttable presumption of the principal's liability, in an action between creditor and surety." Restatement, Security § 139(3), comment e (1941). We support this proposition, and we are inclined to believe that the courts of Alaska, when confronted with the problem, will support it also. The Supreme Court of Alaska has frequently relied on Restatement rules. See, e. g., Thrift Shop, Inc. v. Alaska Mutual Savings Bank, 398 P.2d 657 (Alaska 1965). The issue is not whether the judgment is admissible as evidence. It is the effect which is to be given to the judgment after its admission. It is a matter of substance and as such is controlled by Alaskan law. United States v. Maryland Cas. Co., 204 F.2d 912, 915 (5th Cir. 1953). When a creditor, without suing a guarantor, obtains a judgment against the principal by consent or default, suspicion arises that the creditor and the principal may have conspired improperly for advantage to themselves and the ultimate disadvantage of the guarantor. When, therefore, a creditor has obtained a judgment against the principal in an action which the principal has not contested, that judgment, in the creditor's subsequent and first suit against the guarantor, cannot and should not, of itself alone, constitute prima facie evidence of the amount of the guarantor's obligation.[5] See United States v. Maryland Cas. Co., supra.

5. The opinion in Moses v. United States, supra, rendered in 1897, contains language claimed to express a contrary rule. We are not certain that it does. In *Moses*, a surety had executed a $12,000 bond conditioned on an army officer's faithful discharge of his duties. The United States, after having recovered a judgment of $101,257.08 against the officer for his misappropriation of public funds, instituted suit against the surety.

The surety contended that the original judgment was inadmissible for any purpose, and the Supreme Court, in rejecting the contention, stated, as to the judgment, "It proved, at least, *prima facie*, a breach of the bond by showing the amount of public moneys which Howgate, the principal, had failed to faithfully expend and honestly account for. It was far beyond the penalty in the bond, and, unexplained, the judgment was sufficient evidence of

■ The appellees had been disassociated from the corporations which were the judgment debtors for approximately eight years before the institution of suit against them. For the same extended period of time they had been divested of interest, direct and indirect, in the property which secured the original obligation and which was the subject of the foreclosure proceedings. We have already seen that the appellant, for reasons not for our speculation, did not join them in the suit which fixed the amount of liability against the principal obligors alone. The appellees were remote from events, including the payment of amounts toward satisfaction of the judgment and the manner of the payments. Under these circumstances, it was not error for the District Court to find that the proper amounts which should be credited to satisfaction of the original judgment rested "chiefly or entirely" within the knowledge of the appellant as the creditor.[6] It is well settled that in the interest of fairness the burden of proof ordinarily resting upon one party as to a disputed issue may shift to his adversary when the true facts relating to the disputed issue lie peculiarly within the knowledge of the latter. See, e. g., United States v. New York, N. H. & H. R. R. Co., 355 U.S. 253, 78 S.Ct. 212, 2 L.Ed.2d 247 (1957), wherein the Supreme Court stated, "The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." 355 U.S. 256 n. 5, 78 S.Ct. 214 n. 5

■ It is said that appellees may have availed themselves of adequate knowledge by recourse to the trustee of the bankrupt partnership or to his records. Aside from possible disinclination to rely upon an official who had not contested the original suit wherein the judgment included a $5,000 loss for which he himself may have been responsible, the appellees were not obliged, in the circumstances which we have outlined, to secure the proof.

■ The appellant, in its pre-trial memorandum, had represented that it would prove its principal allegation, the just amount of indebtedness. We must assume, absent request for modification of, or relief from, the pre-trial commitment, that the appellees relied upon the representation which appellant made. Had the appellant, at the time of the pretrial conference, taken the position which it now takes, that it had no obligation as to proof other than to introduce the orig-

---

the breach of condition." (Citations omitted.) 166 U.S. at 600, 17 S.Ct. at 693. It is significant that the thrust of the language is to the point that the judgment was prima facie evidence of "a breach of the bond" and a "breach of condition," not of the amount of the unsatisfied portion of the original judgment. We note also that in *Moses* there was apparently no denial by the surety, as there was in the instant case, of the creditor's allegation of the amount of the surety's obligation. It is clear from the opinion in *Moses* that there was no dispute over the fact that the unsatisfied portion of the original judgment far exceeded the amount of the surety's bond. Moreover, while the judgment against the principal was taken after the principal had failed to file an answer, the opinion recites that the principal "appeared in the action by an attorney." In any event, the Supreme Court in *Moses* was concerned with the application of federal law, whereas our obligation is to apply Alaskan law as it is or as it may reasonably be foreseen.

6. That this was true as between the appellant and appellees can hardly be questioned. The challenged finding was a finding of fact, based upon a consideration of all the circumstances, not excluding the court's awareness of the original award, at the least questionable, of an attorney's fee for $4,000 for the work involved in filing a suit upon a promissory note and in obtaining a judgment by default against the principal obligors and a judgment by consent against a trustee in bankruptcy. Furthermore, we cannot ignore the fact that the original judgment included the sum of approximately $5,000 to reimburse appellant for its expenses in connection with the "care and preservation of the mortgaged property" when the appellant concedes that depreciation in value, resulting from "vandalism and theft," occurred when the property was "under the control of the trustee."

inal judgment, it is not unlikely that appellees would have attempted to prepare themselves with evidence relating to the disputed amount. That the appellant's representation in its pre-trial memorandum evidenced its understanding of its burden is confirmed by the fact that it did indeed undertake to offer proof in the presentation of its case in chief. It is essential to the orderly disposition of litigation that parties, as well as courts, be able to rely on procedural courses which have been clearly defined and established in properly conducted pre-trial proceedings.

The entire record supports the District Court's conclusion that the burden of proof in this case rested upon appellant. It had agreed to meet it, and it did not do so. The judgment is

Affirmed.