3 F.3d 1289
 62 USLW 2164, 1993 Copr.L.Dec. P 27,139
 ITSI TV PRODUCTIONS, INC., Plaintiff-Appellee,
v.
AGRICULTURAL ASSOCIATIONS, for the 2nd (also referred to as
San Joaquin Co Fair), 7th (also) referred to as Monterey Co
Fair), 9th (also referred to as Redwood Acres Fair), 15th
(also referred to as Great Kern Co Fair), 19th (also
referred to as Santa Barbara National Horse and Flower
Show), 21st (also referred to as Fresno County Fair), 22nd
(also referred to as Del Mar Fair), 27th (also referred to
as Shasta District Fair), 31st (also referred to as Ventura
County Fair), 37th (also referred to as Santa Barbara County
Fair), and 50th Districts (also referred to as Antelope
Valley Fair--all named in plaintiff's Second Amended
Complaint), Defendant-Appellants,
and
California Authority Racing Fairs, et al., Defendants.
ITSI TV PRODUCTIONS, INC., Plaintiff-Appellant,
v.
CALIFORNIA EXPOSITION AND STATE FAIR, Defendant-Appellee,
and
California Authority Racing Fairs, et al., Defendants.
 Nos. 92-15541, 92-15860.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 13, 1993.
Decided Aug. 31, 1993.
 
 Mark E. King, David B. Kahn, Ltd., Chicago, IL, and David W. Post, McDonough, Holland & Allen, Sacramento, CA, for plaintiff-appellee-cross-appellant.
 Harold L. Eisenberg, Deputy Atty. Gen., Sacramento, CA, for defendants-appellants-cross-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before: WALLACE, Chief Judge; NELSON and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide a question of apparent first impression: who bears the burden of persuasion when a putative state entity claims immunity from suit in federal court under the Eleventh Amendment?
 
 
 2
 * ITSI T.V. Productions, Inc. ("ITSI") sued California State Fair and Exposition ("Cal Expo") and various District Agricultural Associations ("the DAAs") for copyright infringement. At issue were broadcasts of horse races created by ITSI and used by Cal Expo and the DAAs in connection with state and local fairs they had organized. Both Cal Expo and the DAAs moved to dismiss on the ground that they are "arms of the state" of California, and, as such, immune from suit under the Eleventh Amendment. The district court ruled that this motion presented a jurisdictional issue separate from the merits of the case, and thus permitted limited discovery and held an evidentiary hearing to determine the facts relevant to that issue. The court thereafter issued an order in which it granted the motion to dismiss as to Cal Expo, and denied the motion as to the DAAs. 785 F.Supp. 854. The disappointed parties appeal.
 
 II
 
 3
 The district court assigned Cal Expo and the DAAs the burden of proving their entitlement to Eleventh Amendment immunity. On appeal, the DAAs say that the court erred because their motion went to the district court's jurisdiction, and it is established that the party asserting jurisdiction has a continuing burden to establish that jurisdiction is proper. See, e.g., McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) (the party "seeking relief ... must carry throughout the litigation the burden of showing that he is properly in court").
 
 
 4
 The Supreme Court has held that "the Eleventh Amendment defense ... partakes of the nature of a jurisdictional bar" insofar as it may be raised for the first time on appeal. Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974). The Court has emphasized, however, that it has "never held that [the defense] is jurisdictional in the sense that it must be raised and decided by [the court] on its own motion." Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 516 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982). The Court has accordingly recognized that Eleventh Amendment immunity, unlike a true jurisdictional bar, may be expressly waived, Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985), Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984), and may even be forfeited by the State's failure to assert it. See Blatchford v. Native Village of Noatak, --- U.S. ----, ---- n. 3, 111 S.Ct. 2578, 2584 n. 3, 115 L.Ed.2d 686 (1991) (noting that, in Moe v. Confederated Salish and Kootenai Tribes, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), "[s]ince Montana had not objected in this Court on sovereign immunity grounds, its immunity had been waived and was not at issue.").
 
 
 5
 Eleventh Amendment immunity thus does not implicate a federal court's subject matter jurisdiction in any ordinary sense. It therefore cannot be said that the general principle that the plaintiff must establish the facts supporting "jurisdiction" means that ITSI should have been required to prove that Cal Expo and the DAAs were not entitled to such immunity. Rather, we believe that Eleventh Amendment immunity, whatever its jurisdictional attributes, should be treated as an affirmative defense. See Blatchford, --- U.S. at ---- n. 4, 111 S.Ct. at 2585 n. 4 (explaining that general jurisdictional statutes do not abrogate Eleventh Amendment immunity: "The fact that Congress grants jurisdiction to hear a claim does not suffice to show that Congress has abrogated all defenses to that claim."). Like any other such defense, that which is promised by the Eleventh Amendment must be proved by the party that asserts it and would benefit from its acceptance.
 
 
 6
 Our conclusion is bolstered by consideration of the procedures employed in assessing other sovereign immunity claims. For example, under the Foreign Sovereign Immunities Act, 28 U.S.C. Secs. 1330, 1602-11, through which Congress has declared that the sovereign acts of foreign states may not be sued upon in our courts, it is ultimately "the defendant [that] must prove its entitlement to immunity by a preponderance of the evidence." Meadows v. Dominican Republic, 817 F.2d 517, 523 (9th Cir.), cert. denied, 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987). Similarly, under the Federal Tort Claims Act, 28 U.S.C. Sec. 1346, although the "plaintiff bears the burden of persuading the court that it has subject matter jurisdiction under the FTCA's general waiver of immunity," Prescott v. United States, 973 F.2d 696, 701 (9th Cir.1992), "the government bears the ultimate burden of proving the applicability of an exception" to this general waiver, because the claim of exception "is analogous to an affirmative defense," and the burden of proof is "correctly placed ... on the United States as the party which benefits from the defense." Id. at 702.
 
 
 7
 Finally, we note the familiar principle that, "when the true facts relating to [a] disputed issue lie peculiarly within the knowledge of" one party, the burden of proof may properly be assigned to that party "in the interest of fairness." United States v. Hayes, 369 F.2d 671, 676 (9th Cir.1966). See United States v. New York, N.H. & H.R.R. Co., 355 U.S. 253, 256 n. 5, 78 S.Ct. 212, 214-15 n. 5, 2 L.Ed.2d 247 (1957) ("The ordinary rule, based upon considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."). In general, a claim of Eleventh Amendment immunity will occasion serious dispute only where a relatively complex institutional arrangement makes it unclear whether a given entity ought to be treated as an arm of the state. In such cases, the "true facts" as to the particulars of this arrangement will presumably "lie peculiarly within the knowledge of" the party claiming immunity. "Considerations of fairness" thus support the conclusion that the public entity ought to bear the burden of proving the facts that establish its immunity under the Eleventh Amendment.
 
 
 8
 The district court was correct in assigning the burden of persuasion to Cal Expo and the DAAs.
 
 III
 
 9
 Turning to the merits, we observe that our cases have established a five-part test for use in evaluating a litigant's claim that it is an "arm of the state" entitled to Eleventh Amendment immunity:
 
 
 10
 To determine whether a governmental agency is an arm of the state, the following factors must be examined: whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has power to take property in its own name or only the name of the state, and the corporate status of the entity. To determine these factors, the court looks to the way state law treats the entity.
 
 
 11
 Durning v. Citibank, N.A., 950 F.2d 1419, 1423 (9th Cir.1991) (quoting Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir.1988), cert. denied, 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989)) (citation omitted). In Durning, we stated that the first of these is the "most important factor." Id. at 1424. We explained that the inquiry required under this heading is "whether a judgment against the defendant entity under the terms of the complaint would have to be satisfied out of the limited resources of the entity itself or whether the state treasury would also be legally pledged to satisfy the obligation." Id.
 
 
 12
 * The district court found that "Cal Expo receives all of its funds from sources other than the state's General Fund,"[1] that "essentially all of its funds are derived directly from its own activities or from allocations from Special Revenue Funds,"[2] and that "[t]here appears to be no obligation on the part of the state to pay debts of a special fund agency." These findings are not clearly erroneous. Under Durning, such facts lead unavoidably to the conclusion that "the first and most important factor" weighs against Cal Expo's claim of immunity.[3]
 
 
 13
 The district court nonetheless "conclude[d] that, as to the most crucial factor, the relationship between the agency and the State Treasury, the evidence and law suggest that [Cal Expo] is entitled to Eleventh Amendment immunity." The court predicated this conclusion on the fact that "the funds of the fair are kept in accounts of the State Treasury, which may only be drawn on by warrants issued by the State Controller ... [and which] may be borrowed by the state under certain circumstances, apparently without the consent of the fair."
 
 
 14
 The district court appears to have found support for this reasoning in our decision in Austin v. State Industrial Insurance System, 939 F.2d 676 (9th Cir.1991). In Austin, we held that the defendant, SIIS, was an arm of the state of Nevada, and as such entitled to Eleventh Amendment immunity. We observed that, although "monetary judgments against SIIS could impact Nevada's treasury," id. at 679 (emphasis supplied), they would not necessarily do so. We explained, however, that this was "not fatal to SIIS's claim of immunity," id., and that, in light of the Nevada Supreme Court's determination that SIIS was a state agency, SIIS would be deemed an arm of the state for Eleventh Amendment purposes. Id.
 
 
 15
 Austin is thus fully consistent with Durning. Both cases recognize that, "[w]hile a determination that a judgment necessarily would have an impact on the state treasury would lead ineluctably to the conclusion that [a defendant] is a state agency, the absence of such an impact does not necessarily preclude [E]leventh [Amendment] immunity." Austin, 939 F.2d at 679. The cases do not differ with respect to what suffices to demonstrate "an impact on the state treasury" of the relevant sort. The critical question is whether, in the event of a judgment against Cal Expo, "the state treasury would also be legally pledged to satisfy the obligation." Durning, 950 F.2d at 1424. There was no justification for the district court's consideration of anything else in connection with "the first and most important factor" in our five-part test, and the district court therefore erred in concluding that this factor militated in favor of Cal Expo's claims of immunity.
 
 
 16
 Of course, consideration of the other factors we have recognized as relevant to the inquiry could support the conclusion that Cal Expo is an arm of the state. We need not look far, however, to discount this possibility. The district court found that Cal Expo is primarily involved in organizing state fairs and expositions; it thus can hardly be said to perform "central governmental functions." In addition, the court found that Cal Expo has its own separate identity, even though it cannot initiate litigation independently and cannot hold property in its own name.
 
 
 17
 On balance, then, it is clear that there exist no circumstances of sufficient weight to overcome the fact that the State of California would not be legally obligated to pay any judgment that might be rendered against Cal Expo in this litigation. Cal Expo is not an arm of the state, and the district court erred in dismissing it from this suit on the ground of Eleventh Amendment immunity.
 
 B
 
 18
 The district court found that "[t]here is no apparent obligation on the part of the state to appropriate monies for the purpose of satisfying the obligations of the DAAs. It appears to this court that any judgment is reasonably to be expected to be satisfied out of the DAAs' own limited resources...." These findings are not clearly erroneous.[4] Accordingly, the "first and most important" Durning factor weighs against the DAAs' claim of immunity, as the district court correctly concluded.
 
 
 19
 As to the other factors, the district court found that: the DAAs "essentially run local fairs and horse racing events," which, we must agree, are not "central governmental functions"; they may not sue in their own right, but they may be sued themselves; their property is held in the name of the state; and they "have a distinct organizational character." Consideration of these factors plainly does not compel the conclusion that the DAAs must be deemed immune from suit.
 
 
 20
 Finally, we note that the California Court of Appeal has held that the DAAs "are not such a part of the state itself as to require that a suit against one of them be considered as a suit against the state." Brown v. Fifteenth Dist. Agric. Fair Ass'n, 159 Cal.App.2d 93, 323 P.2d 131, 133 (1958). See also Lewis v. Seventeenth Dist. Agric. Ass'n, 165 Cal.App.3d 823, 211 Cal.Rptr. 884, 891 (1985) (DAAs are local agencies for purposes of state environmental statute). The state courts' conclusions in this regard are entitled to a degree of deference. Austin, 939 F.2d at 678.
 
 
 21
 In sum, the district court correctly concluded that the DAAs are not arms of the state, and thus properly denied their motion to dismiss.
 
 IV
 
 22
 The district court properly assigned Cal Expo and the DAAs the burden of proving their entitlement to Eleventh Amendment immunity. The court correctly held that the DAAs were not entitled to immunity, and its denial of the DAAs' motion to dismiss is AFFIRMED. The court erred in holding that Cal Expo was entitled to immunity, and its grant of Cal Expo's motion to dismiss is REVERSED. Each party shall bear its own costs.
 
 
 
 [1]
 "The General Fund consists of money received into the treasury and not required by law to be credited to any other fund." Cal.Gov't.Code Sec. 16300
 
 
 [2]
 The district court found that "[a] Special Revenue Fund is a fund in the State Treasury related to resources obtained from specific revenue sources (other than expendable trusts or major capital projects) that are legally restricted for specified purposes."
 
 
 [3]
 Cal Expo disputes this conclusion by pointing to Cal.Gov't.Code Sec. 965, which says that funds must be appropriated whenever there is insufficient money available to pay a judgment rendered against the State. The district court correctly observed, however, that this "begs the very question, i.e., is a suit against Cal Expo a suit against the State." Cal Expo also adduces Cal.Gov't Code Sec. 16351, which permits the Governor to transfer, on a temporary basis, money available in the General Fund to an "exhausted" special fund. Durning makes clear that the mere possibility that state funds might be used to pay a judgment is of no independent significance: "The relevant question is whether the state would have a legal liability to pay the judgment, not whether the defendant entity would have the practical ability to pay it." 950 F.2d at 1424 n. 2
 
 
 [4]
 We note that the DAAs do not actually dispute these findings. They argue against them by attempting to show that a judgment against the DAAs "could" "impact" the state treasury if the DAAs were to lack sufficient funds to satisfy it themselves. As noted above, this is simply not relevant. See Durning, 950 F.2d at 1424 n. 2