Jeniene TEICHGRAEBER, Plaintiff,

v.

MEMORIAL UNION CORPORATION OF THE EMPORIA STATE UNIVERSITY, Defendant.

No. 95–4118–SAC.

United States District Court, D. Kansas.

Nov. 26, 1996.

Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Jeniene Teichgraeber.

Kevin D. Case, Office of the Attorney General, Topeka, KS, for Memorial Union Corporation.

MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion to dismiss pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. (Dk. 51). This is an employment discharge case in which the plaintiff claims she was fired in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, the Kansas Age Discrimination in Employment Act, K.S.A. 44–1111, *et seq.*, and in breach of an implied employment contract. In its motion, the defendant argues it is an arm of the state entitled to Eleventh Amendment immunity from suit in federal court. The plaintiff first disputes that the defendant is an arm of the state and then argues that the Tenth Circuit rejected the defendant's same immunity argument in *Hurd v. Pittsburgh State University,* 29 F.3d 564, 565 (10th Cir.), *cert. de-*

nied, —— U.S. ——, 115 S.Ct. 321, 130 L.Ed.2d 282 (1994).

## STANDARDS GOVERNING MOTION

When a defendant brings a motion to dismiss for lack of subject matter jurisdiction, the plaintiff carries the burden of proving jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *Moir v. Greater Cleveland Regional Transit Authority,* 895 F.2d 266, 269 (6th Cir.1990). In deciding such a motion, the court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Cizek v. United States,* 953 F.2d 1232, 1233 (10th Cir.1992); *Mounkes v. Conklin,* 922 F.Supp. 1501, 1505–06 (D.Kan.1996). The court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Cizek v. United States,* 953 F.2d 1232, 1233 (10th Cir.1992); *Jensen v. Johnson County Youth Baseball League,* 838 F.Supp. 1437, 1440 (D.Kan.1993). The motion here goes beyond the allegations on the face of the plaintiff's complaint and makes a factual attack on the existence of subject matter jurisdiction based on the undisputed facts of record. *See United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994); *Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188 n. 5 (5th Cir.1986). On such a motion, the court does not accord any presumptive truthfulness to the factual allegations in the complaint, and it may weigh the evidence and resolve factual disputes, if necessary, in deciding whether the facts sustain subject matter jurisdiction. *United States v. Ritchie,* 15 F.3d at 598; *see Moir,* 895 F.2d at 269; *Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987).

## RELEVANT FACTS

The plaintiff Jeniene Teichgraeber ("Teichgraeber") worked for the defendant Memorial Union Corporation of the Emporia State University ("Memorial Union") from September 1, 1977, until her termination on September 30, 1994. At the time of her termination, Teichgraeber had been employed as administrative assistant to the Memorial Union. In 1994, the Memorial Union reorganized resulting in its employees becoming employees of the state of Kansas and in the elimination of the administrative assistant position then held by Teichgraeber.

Memorial Union is a nonprofit corporation organized under the laws of the state of Kansas and authorized to operate the student union at Emporia State University. The Memorial Union's human resources and payroll needs are handled for the most part by Emporia State University's Human Resources/Payroll Department. The annual report for the Memorial Union shows it having assets of $772,457 and liabilities of $312,982. The Memorial Union does not carry insurance covering claims like the plaintiff's. With the exception of its officers and directors, the Memorial Union no longer has employees, as all positions are now held by employees of Emporia State University.

## ELEVENTH AMENDMENT BASICS

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. As construed by the Supreme Court, this amendment embodies more than what its literal text conveys. Though the exact words of the Eleventh Amendment seem to preclude only diversity jurisdiction, the Supreme Court in *Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890), held that the Eleventh Amendment even precludes citizens from bringing suits in federal court against their own states. The reasoning, then and now, rests mostly on an unstated premise:

> Despite the narrowness of its terms, since *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States

entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty. . . . (citations omitted).

*Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991); *see Welch v. Texas Dept. of Highways & Public Transp.,* 483 U.S. 468, 472, 107 S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1987) (plurality opinion). Consequently, "[t]he Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, ——, 115 S.Ct. 394, 400, 130 L.Ed.2d 245, 255 (1994). In other words, the Eleventh Amendment affirms " 'that the fundamental principle of sovereign immunity limits the grant of judicial authority under Art. III' of the Constitution." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985) (quoting *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984)).

 Though often couched in terms of sovereign immunity, the Eleventh Amendment functions somewhat like a jurisdictional bar. *See Welch,* 483 U.S. at 476 n. 6, 107 S.Ct. at 2947 n. 6 (the "Eleventh Amendment immunity 'partakes of the nature of a jurisdictional bar,' " (quoting *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974)). Unlike most jurisdictional bars, Eleventh Amendment immunity can be waived or forfeited. *Christy v. Pennsylvania Turnpike Commission,* 54 F.3d 1140, 1144 (3rd Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 340, 133 L.Ed.2d 238 (1995). This court agrees with three recent circuit court decisions that " 'whatever its jurisdictional attributes, [Eleventh Amendment immunity] should be treated as an affirmative defense,' and '[l]ike any other such defense, that which is promised by the Eleventh Amendment must be proved by the party that asserts it and would benefit from its acceptance.' " *Christy,* 54 F.3d at 1144 (quoting *ITSI TV Productions Inc. v. Agricultural Associations,* 3 F.3d 1289, 1291 (9th Cir.1993)); *see also Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 734 n. 5 (7th Cir.1994); *cf. Mancuso v. New York State Thruway Authority,* 86 F.3d 289, 292 (2nd Cir.1996) (defendant must "demonstrate that it is more like 'an arm of the State.' "), *cert. denied,* —— U.S. ——, 117 S.Ct. 481, 136 L.Ed.2d 375 (1996). Serious factual disputes over Eleventh Amendment immunity occur "only where a relatively complex institutional arrangement makes it unclear whether a given entity ought to be treated as an arm of the state." *ITSI TV,* 3 F.3d at 1292. Giving the burden to the party asserting immunity seems appropriate and fair in this situation, since "the 'true facts' as to the particulars of this arrangement will presumably 'lie peculiarly within the knowledge of' the party claiming immunity." *Id.*

## "ARM OF THE STATE"

 The Eleventh Amendment immunity protects only the states themselves and those state entities considered to be "arms of the state." *Ambus v. Granite Bd. of Educ.,* 995 F.2d 992, 994 (10th Cir.1993). Its protection does not extend to counties, municipal corporations or other political subdivisions. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). Arms of the state are considered to be those "entities created by state governments that operate as alter egos or instrumentalities of the states." *Watson v. University of Utah Medical Center,* 75 F.3d 569, 575 (10th Cir.1996). "Under the arm-of-the-state doctrine, courts classify state governmental bodies according to a dichotomy, in which arms of the state enjoy Eleventh Amendment immunity, whereas political subdivisions such as counties and cities do not." *Mascheroni v. Board of Regents of University of California,* 28 F.3d 1554, 1559 (10th Cir.1994).

 The Tenth Circuit has said that whether an entity qualifies as an "arm of the state" is an issue analyzed in these terms:

In evaluating an assertion of immunity by an entity such as the Wyoming Farm Loan Board, the court first examines the degree of autonomy given to the agency, as deter-

mined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing.

*Haldeman v. State of Wyoming Farm Loan Board,* 32 F.3d 469, 473 (10th Cir.1994) (citations omitted). "The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury." *Haldeman,* 32 F.3d at 473.

█ "State universities and colleges almost always enjoy Eleventh Amendment immunity." *Hadley v. North Ark. Community Technical College,* 76 F.3d 1437, 1438 (8th Cir.1996) (footnote omitted), *petition for cert. filed,* 65 U.S.L.W. 3001 (U.S. June 24, 1996) (No. 95–2060). The Tenth Circuit consistently has ruled that "state universities are arms of the state." *Watson,* 75 F.3d at 575 (citations omitted); *see, e.g., University of Texas at Austin v. Vratil,* 96 F.3d 1337, 1340 (10th Cir.1996). The plaintiff concedes that Emporia State University is an arm of the state by reason of K.S.A. 76–711(a). Thus, the inquiry sharpens to whether the Memorial Union enjoys the same status.

From the statutes cited by the parties, the degree of autonomy given the Memorial Union is unclear. A Kansas statute does require that an entity like the defendant Memorial Union must be a "nonprofit corporation organized, officered, and directed by faculty members, students, and alumni of the institution." K.S.A. 76–6a02. This statute also authorizes the Board of Regents to lease campus property to entities like the Memorial Union for purposes of constructing student union buildings and student dormitories. K.S.A. 76–6a02. The statute further specifies certain lease terms:

Every such lease shall provide:

(a) That the building to be erected shall be constructed and equipped in accordance with plans and specifications approved by the secretary of administration and approved by the board.

(b) That the lessee will pay a stated amount of compensation to a superintendent selected by the secretary of administration, who shall serve as inspector for the board during the construction of the building; that such inspector shall have the right to inspect at all times such building and the materials to be used in its construction.

(c) That the activities carried on in the building so erected shall be conducted under rules and regulations adopted by the board.

K.S.A. 76–6a02.

The Board is then to contract with this nonprofit entity "to pay as rental or otherwise for the use of said buildings" an amount equal to the principal and interest for the cost of construction and equipment of the union. K.S.A. 76–6a03. The statute specifies that the cost of construction cannot exceed the estimate made by the secretary of administration. *Id.* The contract must provide:

(a) That when the cost of construction has been paid, together with interest thereon, the buildings so constructed and the equipment therein shall become the property of the state of Kansas.

(b) That the state of Kansas shall incur no liability under such contract or by reason of any authority exercised under this act, except that the board shall collect and apply the fees and charges authorized by K.S.A. 76–6a04 and 76–6a05 in the manner prescribed by this act.

*Id.* To make these payments and to maintain and operate the union, the Board is authorized to charge and collect fees from the students. K.S.A. 76–6a04. "The board may pledge the receipts from such fees and the net income derived from the operation of any student union building to the nonprofit corporation which constructed such building for the payment of the cost of construction and equipment and the interest thereon." *Id.* All such fees collected by the board must be deposited with the state treasurer, and the board shall use those deposits first to pay maintenance and operation expenses and second to pay the nonprofit corporation. K.S.A. 76–6a06.

The defendant argues these provisions establish the State's "veto power" and "exten-

sive control" over the Memorial Union. The defendant further contends that "[a]ll moneys that Memorial Union collects are collected by the Board of Regents and are deposited monthly with the State." (Dk. 52 p. 11). The defendant also insists that these funds are "part of the State treasury." *Id.*

The Kansas statutes cited by the defendant do not sustain its arguments. At most, the statutes specify certain terms of the lease and contract, but those terms do not give the state any particular authority to oversee the nonprofit corporation's operations after the student union building is erected. Though the activities conducted in the building are statutorily subject to the Board's rules and regulations, the court is unable to assess the actual or intended impact of this provision on the Memorial Union's activities. For that matter, the record does not establish the various activities conducted by the Memorial Union and whether they even fall within the category of an essential and traditional governmental function. The record is silent as to who appoints or elects the Memorial Union's board members. Based on the scant record and incomplete analysis offered by the parties, the court cannot say with any confidence that Kansas law characterizes the Memorial Union as an entity of the state subject to significant oversight and control by other state entities. The statutes cited leave the impression that the Memorial Union is not much more to the state than a contractor, a lessee of land, and a seller/lessor of the erected building.

· The cited statutes on union fees do not reveal the extent of financing the Memorial Union receives independent of the state. Nor do the statutes show that the Memorial Union actually receives money from the state treasury. Indeed, K.S.A. 76–6a06 provides that "[n]othing contained in this section shall be construed as placing in the state treasury any money collected under this act." The statutes do not give the state any apparent control over the manner in which the Memorial Union uses the payments it receives from the Board. Finally, the court is provided with no legal or factual basis for believing the judgment in this case would be satisfied out of the state treasury.[1]

The court agrees there are several probative facts indicating that Memorial Union may be Emporia State University's alter ego for purposes of operating the student union building. The court, however, is unable to say from the arguments and facts presented that the defendant has carried its burden of proving it is an arm of the state entitled to Eleventh Amendment immunity. In other words, the evidence and arguments do not prove that a federal suit against the Memorial Union would be an affront to the dignity of the state of Kansas or a threat of liability against the state. For these reasons, the court denies the defendant's motion to dismiss the implied contract claim.[2]

## ABROGATION OF IMMUNITY FOR ADEA CLAIMS

Even assuming the defendant was able to show it was an arm of the state,

1. " '[T]he vulnerability of the State's purse [is] the most salient factor.' " *Mancuso v. New York State Thruway Authority,* 86 F.3d 289, 293 (2nd Cir.1996) (quoting *Hess v. Port Authority Trans-Hudson Corp.,* 513 U.S. 30, ——, 115 S.Ct. 394, 404, 130 L.Ed.2d 245 (1994)).

2. The court's research has not revealed much case law regarding entities similarly situated to the Memorial Union. The 1971 decision in *Brennan v. University of Kansas,* 451 F.2d 1287 (10th Cir.), does not explain the facts or analysis underlying its conclusion that the University Press of Kansas is a state institution. "Although the vast majority of state universities, incorporated and unincorporated alike, have been found to be 'arms' of the State for immunity and diversity purposes, each state university must be evaluated in light of its unique characteristics." *University*

*of Rhode Island v. A.W. Chesterton Co.,* 2 F.3d 1200, 1204 (1st Cir.1993). The same can be said of those entities operating in support of universities. *See Doe v. Lawrence Livermore Nat. Laboratory,* 65 F.3d 771, 774–75 (9th Cir.1995) ("The University is an enormous entity which functions in various capacities and which is not entitled to Eleventh Amendment immunity for all of its functions."), *cert. granted,* —— U.S. ——, 116 S.Ct. 2522, 135 L.Ed.2d 1047 (1996). In *Watson v. University of Utah Medical Center,* 75 F.3d 569, 576 (10th Cir.1996), the defendant Medical Center was "governed by the University Board of Trustees," and had "its annual budget approved by the Board." These factors and the others discussed at page 576 of that published opinion either do not exist or are not of record in the case at bar.

the court would retain jurisdiction over the plaintiff's ADEA claims. "The Eleventh Amendment bar to suit is not absolute." *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990). There are two recognized ways for a federal court to gain jurisdiction over a state: consent or waiver of immunity by the state and abrogation of immunity by Congress. *Feeney,* 495 U.S. at 304, 110 S.Ct. at 1872. Congressional abrogation is the way available here.

Judge Lungstrum in *Hurd v. Pittsburg State University,* 821 F.Supp. 1410, 1412, 1413 (D.Kan.1993), held that the "ADEA, as amended in 1974, was enacted pursuant to the Congress' powers under section five of the Fourteenth Amendment" and that "Congress has abrogated Eleventh Amendment immunity to the states in the ADEA." In an abbreviated opinion, the Tenth Circuit affirmed, saying:

> In a thorough and well-reasoned opinion published at 821 F.Supp. 1410 (D.Kan. 1993), the district court held that Congress intended to abrogate states' Eleventh Amendment immunity when it passed the ADEA. The only additions we can make to the district court's opinion are the citations for two more cases that support its holding. Specifically, in addition to the cases cited by the district court, both the Seventh Circuit, *see Heiar v. Crawford County, Wis.,* 746 F.2d 1190 (1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), and the First Circuit, *see Ramirez v. Puerto Rico Fire Serv.,* 715 F.2d 694 (1st Cir.1983), have held that Congress intended to abrogate states Eleventh Amendment immunity when it passed the ADEA. Accordingly, we affirm for substantially the same reasons given by the district court.

*Hurd v. Pittsburg State University,* 29 F.3d 564, 565 (10th Cir.1994). Thus, there is established Tenth Circuit precedent that Congress, in the exercise of its explicit power to enforce the Fourteenth Amendment "by appropriate legislation," U.S. CONST. amend XIV, § 5, clearly and unequivocally abrogated states' Eleventh Amendment immunity in the ADEA.

■ This court is bound by Tenth Circuit precedent unless the precedent has been overruled by the Tenth Circuit sitting *en banc* or superseded by a contrary Supreme Court decision. *See Haynes v. Williams,* 88 F.3d 898, 900 n. 4 (10th Cir.1996); *United States v. Spedalieri,* 910 F.2d 707, 709 n. 2 (10th Cir.1990); *Loftus v. Southeastern Pennsylvania Transp. Authority,* 843 F.Supp. 981, 984 (E.D.Pa.1994). Despite the defendant's arguments, the Supreme Court's decision in *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), is not contrary to the holding or reasoning in the *Hurd* decision.

In *Seminole Tribe,* the Court observed that it had recognized only two provisions of the Constitution—the Fourteenth Amendment and the Interstate Commerce Clause—as giving Congress the authority to abrogate Eleventh Amendment immunity. —— U.S. at ——, 116 S.Ct. at 1125. With respect to the Fourteenth Amendment, the Court said:

> In *Fitzpatrick [v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) ], we recognized that the Fourteenth Amendment, by expanding federal power at the expense of state autonomy, had fundamentally altered the balance of state and federal power struck by the Constitution. *Id.* at 445 [96 S.Ct. at 2666]. We noted that § 1 of the Fourteenth Amendment contained prohibitions expressly directed at the States and that § 5 of the Amendment expressly provided that "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." *See id.* at 453 [96 S.Ct. at 2670] (internal quotation marks omitted). We held that through the Fourteenth Amendment, federal power extended to intrude upon the province of the Eleventh Amendment and therefore that § 5 of the Fourteenth Amendment allowed Congress to abrogate the immunity from suit guaranteed by that Amendment.

—— U.S. at ——, 116 S.Ct. at 1125. The Supreme Court then expressly overruled the plurality opinion in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which had held that Congress had authority to abrogate Eleventh Amendment immunity under the Interstate

Commerce Clause. —— U.S. at ——, 116 S.Ct. at 1128. As a result of *Seminole Tribe,* the only remaining recognized constitutional authority for congressional abrogation of the states' immunity is the enforcement provision of the Fourteenth Amendment. Thus, the Tenth Circuit's holding in *Hurd* that Congress pursuant to the Fourteenth Amendment had abrogated the states' immunity in the ADEA is not affected by *Seminole Tribe.*

The Supreme Court in *Seminole Tribe* did not depart but simply reaffirmed the rules requiring that Congress' intent to abrogate be "unequivocally expressed" or "unmistakably clear" in the statutory language. —— U.S. at ——————, 116 S.Ct. at 1123–24 (citing *Atascadero State Hospital v. Scanlon,* 473 U.S. at 242–43, 105 S.Ct. at 3147–48; *Dellmuth v. Muth,* 491 U.S. 223, 230, 109 S.Ct. 2397, 2401, 105 L.Ed.2d 181 (1989)). These same rules were governing at the time of the Tenth Circuit's decision in *Hurd.* Absent some statement in *Hurd* that the Circuit had applied rules contrary to *Atascadero, Dellmuth* and *Seminole Tribe,* this court may not depart from *Hurd.* Of course, there are no such statements in either the district court's decision or the circuit court's opinion in *Hurd.*

IT IS THEREFORE ORDERED that the defendant's motion to dismiss pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction (Dk. 51) is denied.